W. H. BARRETT *et al.* v. THE KANSAS & TEXAS COAL COMPANY.

No. 13,905.   (79 Pac. 150.)

SYLLABUS BY THE COURT.

1. TITLE AND OWNERSHIP—*Exception in Deed—Minerals.*   A deed to real estate contained the following provision: "This deed is made subject to the following exceptions, reservations, and conditions, to wit: . . .   The said party of the first part hereby reserves the coal and all other mineral underlying said land." *Held,* that this constituted an exception, not a reservation.   The title to the coal remained in the grantor; not a mere easement to go upon the land to mine it.

2. ——— *Parol Testimony.*   There is not such ambiguity in the language quoted from the deed as to permit the introduction of parol testimony to change or vary the terms of the deed.

3. ——— *Abandonment.*   In this state the fee-simple title to real estate cannot be lost by mere abandonment.

4. PRACTICE, DISTRICT COURT—*Election of Defenses.*   Ordinarily a party, after having deliberately selected his ground of defense and finding himself defeated thereon, should not be permitted so to shift it as to court the hazard of another battle.

Error from Crawford district court; WALTER L. SIMONS, judge. Opinion filed January 7, 1905. Affirmed.

*Blue & Bulger,* and *Kimball & Osgood,* for plaintiffs in error.

*Morris Cliggitt,* for defendant in error.

The opinion of the court was delivered by

CUNNINGHAM, J.: The defendant in error sought to enjoin the plaintiffs in error from mining and carrying away coal in a place under a certain described tract of land, and asked an accounting and judgment for the value of coal by them already mined and carried away.

Both parties claim the ownership of the coal in question, and their rights turn upon the construction of a deed and the considerations growing out of such construction. The plaintiff below was the owner of a tract of land. On May 11, 1898, it conveyed the same to one of the defendants below, under whom the balance claim, with the following exceptions and reservations in the deed:

"This deed is made subject to the following exceptions, reservations, and conditions, to wit: The said party of the first part shall have the use of said land and the buildings thereon until March 1, 1899. The said party of the second part shall not sell any portion of the above-described land in less than forty-acre tracts for a period of ten years next ensuing. The said party of the first part hereby reserves the coal and all other mineral underlying said land, with a right of way of railroad over said land, and it shall not be liable for any damages occasioned by, or arising from, the undermining of said land."

The defendants admitted the taking of the coal from the premises as alleged and sought to defend their

Barrett v. Coal Co.

right so to do under two claims : (1) That the terms
of this deed, properly construed, amounted to but the
reservation of a mere easement in the grantor to go
upon the granted premises, and not to an exception,
whereby the title to the coal remained vested in the
grantor ; (2) granting that by the terms of the deed
the title to the coal remained in the grantor, that such
title might be abandoned by the joining of a purpose
so to do with an act to that end, and, being abandoned,
the coal would become the property of the grantees
upon their taking possession.   By the quoted terms
of the deed, did title remain in the grantor, or was
there simply an easement created under which it
might, at the will of the grantee, go upon the land to
mine the coal?   In other words, was this an excep-
tion or reservation ?

An exception is defined at page 416 of volume 3 of
the sixth edition of Washburn on Real Property as
follows :   "An exception is the taking of something
out of the thing granted which would otherwise pass
by the deed."

Other definitions are :   "An exception is defined as
a clause in a deed whereby the feoffer, donor, lessor,
etc., doth except something out of that which he had
granted before by his deed."   (*Darling v. Crowell*, 6
N. H. 423.)   "The office of an exception is to take
something out of the thing granted that would other-
wise pass."   (13 Cyc. 673 ; *Roberts v. Robertson*, 53
Vt. 690, 38 Am. Rep. 710 ; *Biles v. Tacoma, Olympia,
&c. R. R. Co.*, 5 Wash. 509, 32 Pac. 211.)   On the
other hand, "a reservation is a clause in a deed
whereby the grantor reserves some new thing to him-
self out of that which he had granted before."   (13
Cyc. 672.)   It is "that which issues from, or is an
incident of, the thing granted, and not a part of it."

(*M*rshall v. *Trumbull*, 28 Conn. 183, 73 Am. Dec. 67.) "Something newly created out of the granted premises." (*Hurd v. Curtis and another*, 7 Metc. 94, 110.) "Something merely created or reserved out of the thing granted that was not in existence before." (*Winston v. Johnson*, 42 Minn. 398, 401, 45 N. W. 958; *Elliott v. Small*, 35 id. 396, 29 N. W. 158, 59 Am. Rep. 329.) "The creation of a right or interest which had no prior existence as such in a thing or part of a thing granted." (*Kister v. Reeser*, 98 Pa. St. 1, 5, 42 Am. Rep. 608.)

In *Craig v. Wells*, 11 N. Y. 315, 321, it was held:

"A reservation is always of something taken back out of that which is clearly granted, while an exception is some part of the estate not granted at all. A reservation is never of any part of the estate itself, but of something issuing out of it. An exception, on the other hand, must be a portion of the thing granted, or described as granted, and can be of nothing else; and must also be of something which can be enjoyed separately from the thing granted." (*Craig v. Wells*, 11 N. Y. 315, 321.)

Technically, the word "exception" applies to the first class and the word "reservation" to the second class of these estates. However, the use of these technical words is by no means determinative of the purpose of those using them, as not infrequently they are used interchangeably; hence we must go to the entire document or, in proper cases, to evidence *aliunde*, for their interpretation.

Bearing in mind these definitions and principles, let us look to the deed under consideration. It was made subject to certain "exceptions, reservations, and conditions," one of which was: "The said party of the first part hereby reserves the coal and all other mineral underlying said land." From this language it seems

to be clear that the coal itself was retained by the grantor, and not a mere easement to go upon the land and mine it. It was the coal itself which was the object of the reservation, the title to which was retained.

In *Whitaker v. Brown*, 46 Pa. St. 197, the exception was in the following language : "Saving and reserving, nevertheless, for his own use the coal contained in the said piece or parcel of land, together with free ingress and egress by wagon road to haul the coal therefrom as wanted."

It was held that the saving clause operated as an exception of the coal, and, therefore, that the entire and perpetual property therein remained in the grantor. (See, also, *Foster & Co. v. Runk*, 109 Pa. St. 291, 58 Am. Rep. 720 ; *Lillibridge v. Coal Co.*, 143 id. 293, 22 Atl. 1035, 13 L. R. A. 627, 24 Am. St. Rep. 544.)

In *Sloan et al. v. Lawrence Furnace Co.*, 29 Ohio St. 568, in construing the words of a deed "reserving a right of way for a road through said lands thirty feet wide to the county road, and also all the minerals underlying the soil, to be mined and excavated, from the front on the Ohio river," the court used the following language :

"It is true, the intention of the grantor was expressed by the word 'reserving,' which technically saves only a right to some use or benefit in the thing granted, instead of excluding or excepting from the operation of the deed a part of the thing embraced in the general description. But while this technical distinction between a reservation and an exception may exist, it is quite clear, from the subject-matter, that 'reserving' was here used in the sense of 'excepting.' The 'minerals underlying the soil' being a part of the land described in the deed, and not a mere future benefit or interest therein, there can be no doubt

the grantor intended to retain the fee-simple title to the minerals.'' (See, also, *Wait v. Baldwin*, 60 Mich. 622, 27 N. W. 697, 1 Am. St. Rep. 551; *Rich v. Zeilsdorff*, 22 Wis. 544, 99 Am. Dec. 81; *Kincaid, &c., v. McGown, &c.*, 88 Ky. 91, 4 S. W. 802, 13 L. R. A. 289; 2 Devlin on Deeds, § 980.)

A large number of cases illustrative of the same doctrine may also be found in Barringer and Adams's Law of Mines and Mining, at page 83.

The claim, however, is made that the language employed in the deed is ambiguous, and therefore parol evidence which was offered should have been received to show the real intention of the parties by its use. If there be in this language a latent ambiguity then this claim is correct. An ambiguity is defined to be ''duplicity, indistinctness or uncertainty of meaning of an expression used in a written instrument.'' (1 Bouv. 137.) To be latent it must be an ambiguity which arises from some collateral circumstance or extrinsic matter, in a case where the language of the instrument itself is intelligible. If, however, the language of the instrument, being intelligible and certain, conveys a definite and well-understood legal meaning, the universal rule of substantive law, that parol evidence cannot be received to change, vary, contradict or modify it, must apply. We think such is the language of this exception. As already noted, it retains the *coal*, the thing itself, the thing then in existence. It does not take back out of that which is granted something not of the estate itself, a mere appurtenant to the estate granted, an easement, something that would not have existed had not the land been granted. There are no two meanings that could be attached to the language used. We do not think this is a case falling within any of the excep-

tions excluding parol evidence to vary the terms of a deed.

We conclude that the title to the coal in place did not pass by the deed ; that the coal remained the property of the plaintiff below ; that while in place it was real estate and should be governed by the laws relative to real estate.

Under the theory that the title to real estate may be lost by abandonment the defendants sought to plead and prove a purpose and appropriate acts sufficient to constitute abandonment by the plaintiff of the coal in question and the taking possession of it by the defendants. May title to real estate be lost and acquired in this manner ? There is no question but that personal property may be abandoned by the owner, with a view of divesting himself of title, and to such case such property becomes that of the first person who possesses himself of it with a purpose of making it his own, but we are quite clear that such is not the case with real estate. Such a doctrine would be in conflict with our statutes regulating conveyances, and of frauds and perjuries, and against almost the uninterrupted current of authorities. (23 A. & E. Encycl. of L., 2d ed., 940 ; 1 Cyc. 6.)

Of course, inchoate title and special rights such as homestead, depending upon possession, and mere easements may be lost by abandonment. It was also held, under the operation of the Spanish law, as administered in Texas, that this rule applies to fee-simple title, but such is not the rule at the common law.

After the trial had well progressed and to a point where it became obvious to the defendants that neither of their theories in respect to the deed and title to the coal hereinbefore discussed would be accepted by the trial court, they tendered an amendment to their an-

swer and asked permission to file it and introduce evidence thereunder. This answer stated as new matter that the intention of the parties to the deed was that only an easement to go upon the premises and mine the coal should be reserved by the deed, and that the failure to express that purpose was due to a mutual mistake and omission of the scrivener through misunderstanding or ignorance properly to express such purpose. This request was refused. We do not think the court erred in this. At that stage of the proceedings it was a matter of discretion with the court. Nor do we think this discretion was abused. A party ought not, ordinarily, after having deliberately selected his ground and finding himself defeated thereon, to be permitted to shift it so as to court the hazard of another battle.

The judgment of the lower court will be affirmed.

All the Justices concurring.