·75    335
75    517

75    335
76    784
77    220

75    335
78    574

75    335
81    564

THE KANSAS NATURAL GAS COMPANY V. THE BOARD
    OF COUNTY COMMISSIONERS OF THE COUNTY OF
    NEOSHO et al.
              No. 14,915   (89 Pac. 750.)

THE KANSAS NATURAL GAS COMPANY V. THE BOARD
    OF COUNTY COMMISSIONERS OF THE COUNTY OF
    NEOSHO et al.
              No. 14,916   (89 Pac. 750.)

                SYLLABUS BY THE COURT.

1. MINES AND MINERALS—*Oil-and-gas Lease—Rights of Lessee.*
   An oil-and-gas lease conferring upon the lessee the right to
   "enter upon, operate for and procure oil and gas" upon land
   described, and containing no provisions indicating otherwise,
   grants a license to enter and explore, and, if oil or gas is
   found, the right to produce and sever it.

2. ———— *Title to the Minerals.* Until mineral of the kind de-
   scribed is actually produced and severed so that it becomes
   personalty the lessee has no title to any specific portion of it,
   but the legal title to, and the possession of, the entire mass
   and volume remain in the owner of the strata in which it is
   confined.

3. TAXATION—*Minerals in Place.* Chapter 244 of the Laws of
   1897, relating to the taxation of separately owned mineral
   rights, has no application except when the right or title to
   minerals in place has been severed from the right or title to
   the remainder of the land and has become vested in a person
   other than the one having the right or title to the remainder
   of the land.

4. ———— *Same.* When the statute applies the right or title to
   minerals is taxed as realty.

Error from Neosho district court; LEANDER STILL-
WELL, judge.   Opinion filed March 9, 1907.   Reversed.

*John J. Jones,* and *Eugene Mackey,* for plaintiff in
error; *Jones & Finley,* and *Lee & Mackey,* of counsel.

*J. L. Denison,* county attorney, for defendants in
error; *C. S. Denison,* of counsel.

The opinion of the court was delivered by

BURCH, J.:   The plaintiff is the assignee of an oil-
and-gas lease of land in Neosho county.   The county
officials undertook to tax separately from the land it-

self whatever mineral rights the lease created. Upon non-payment of the tax the treasurer was about to enforce collection by a sale of so much of the "mineral reserve" of the land described in the lease as might be necessary for the purpose, when the plaintiff brought suit to enjoin the sale and to annul the tax.

The instrument in question provides that in consideration of one dollar and the covenants of the parties the lessor leases to the lessee the exclusive right for ten years "to enter upon, operate for and procure oil and gas" upon the land described. The lessee agrees to deliver to the lessor one-tenth of the oil realized, or, at the lessor's option, to pay cash for it. On the discovery of gas the lessor is to have enough for domestic purposes free of charge. The lessee takes the remainder, including gas from oil-wells, and agrees to pay fifty dollars per year if gas is marketed from wells producing gas only. Wells are to be located in a way that will interfere as little as possible with the cultivation of the surface of the land. Provision is made for terminating the lessee's rights and for continuing them in force, and the terms of the contract are made binding upon the heirs, executors and assigns of the parties to it.

No oil- or gas-well has been drilled, and the mineral resources of the land, if any exist, are as yet entirely undeveloped.

The county officials proceeded under chapter 244 of the Laws of 1897, which in part reads:

"AN ACT to provide for the assessment and taxing of mineral reserves, or leases, or separately owned mineral or mineral rights, to the owner thereof, separately from the land, and providing penalties for its violation.

*"Be it enacted by the Legislature of the State of Kansas:*

"SECTION 1. That where the fee to the surface of any tract, parcel or lot of land is in any person or persons, natural or artificial, and the right or title to any minerals therein is in another, or in others, the right to such minerals shall be valued and listed separately from the

fee of said land, in separate entries and descriptions, and such land itself, and said right to the minerals therein, shall be separately taxed to the owners thereof respectively. The register of deeds shall furnish to the county clerk, who shall furnish on the 1st day of March each year to each assessor where such mineral reserves exist and are a matter of record, a certified description of all such reserves; provided, that when such reserves or leases are not recorded within ninety days after execution they shall become void if not listed for taxation." (Gen. Stat. 1901, § 7583.)

The district court, ruling upon a demurrer to the petition, which disclosed fully all the facts, upheld the tax and refused an injunction against the proposed proceedings to enforce its collection. The plaintiff prosecutes error to this court.

The question involved depends for its solution upon the proper interpretation to be given the statute. The confusion of thought and inaccuracy of expression so frequently exhibited in legislative enactments are quite apparent in this one, and the precise purpose to be accomplished is somewhat difficult of discernment.

Land, of course, is an all-comprehensive term, and includes everything the elementary law-books say it includes. It may be composed in part of minerals, using the term "minerals" in the popular sense of those inorganic constituents of the earth's crust which are commonly obtained by mining, or other process for bringing them to the surface, for profit. The mineral and non-mineral portions of land are distinguishable and severable, both in legal theory and in fact, and separate property rights in each may coexist. Minerals in place are a part of the land itself, and while they are unsevered are treated as real estate.

The substantive provisions of the law are contained in that part of section 1 which ends with the first period. They clearly relate to land with the minerals of which it is in part composed in place. The "minerals therein" can mean none other than minerals imbedded in the earth as nature deposited them.

22—75 KAN.

On the other hand, the act as clearly deals with severed titles. In common speech the non-mineral portion of land, the portion which covers and envelopes the minerals, is called "the surface" or "the land," and the proprietor of land who devests himself of title to the minerals which it contains is still spoken of as the owner of "the fee" or of "the surface" or of "the land." Minerals themselves are usually called by that name, and the person having a separate property in them alone is spoken of as owning the mineral or having the mineral rights in the land. So in the statute the "fee to the surface" and the "fee of said land" are set in opposition to "the right or title to any minerals therein."

It is contemplated that there shall be an estate consisting of what is left after the mineral rights have been carved out, and that there shall be an estate consisting of the mineral rights which have been segregated. The statute further contemplates that each estate must vest in a separate person. The respective proprietors are called "owners," and the estate in the minerals is nothing short of the right or title to the minerals themselves as they lie in the ground.

When such a state of affairs exists the statute regards the owner of the mineral rights as the proprietor of a distinct item of property which is taxable to him apart from that which is taxable to the owner of the tract, parcel or lot in which the minerals are located, and it makes provision for separate lists, entries, descriptions, valuations, etc. The right or title to the minerals, as the statute expresses it, is taxed as realty. The owner is charged with taxes according to the value of his interest, and the owner of the overlying strata is taxed according to the value of the remaining interest in the land. But there must be a severance of the right to the mineral and the non-mineral portions of the land, respectively, before there can be a **division in taxation.**

Minerals in place being real estate, the act assumes

that instruments creating separate interests in them will be placed of record, but it provides that if such instruments are not recorded within ninety days after execution they shall become void, unless they are brought to the attention of the tax officials so that the purpose of the first part of the section may be accomplished. As before noted, the opening sentences of the body of the act tell just what it proposes to tax and how that subject of taxation shall be listed and valued and taxed. The phraseology employed conclusively shows that the law was not framed for the simple purpose of placing leases of mineral land in the same category with mortgages and tax-sale certificates, and the proviso of the law has no other office than that already assigned it. The words "reserves" and "leases" in the title and in the body of the act mean at one time reserved or leased mineral, and at another written instruments evidencing mineral rights.

Such being the scope and purpose of the law, the lease in question brought into existence no state of facts to which it might apply. The lease grants no estate in the land or in the oil or gas which it may contain. It creates an incorporeal hereditament only—a license to enter and explore for oil and gas, and if they are discovered to produce and sever them. (*Rawlings v. Armel,* 70 Kan. 778, 79 Pac. 683; *Dickey v. Brick Co.,* 69 Kan. 106, 76 Pac. 398.) Until discovered and brought to the surface no severance of title occurs. The minerals not only remain a constituent part of the land but they belong to the owner of the surface-soil beneath which they lie. The lessee has no "right or title" to them (see *Zinc Co. v. Freeman,* 68 Kan. 691, 75 Pac. 995), and they are not separately taxable to him.

There is no standard form for an oil-and-gas "lease." (*Betterment Co. v. Blaes, ante,* p. 69.) Each instrument must be interpreted in the light of its own peculiar provisions. (*Ringle v. Quigg,* 74 Kan. 581, 87 Pac. 724.)

In the following cases decided by this court, though not "lease" cases, the instruments in question were held to sever the title to the mineral portions of the land: *Kurt v. Lanyon*, 72 Kan. 60, 82 Pac. 459; *Moore v. Griffin*, 72 Kan. 164, 83 Pac. 395, 4 L. R. A., n. s., 477; *Barrett v. Coal Co.*, 70 Kan. 649, 79 Pac. 150. These cases are similar to that of *In re Major*, 134 Ill. 19, 24 N. E. 973, in which the tax law of Illinois was applied. The syllabus reads:

"Where there is a grant of mineral land, with a reservation of the mining right to the grantor, this will amount to a separation of the rights of property as between the land and mines or mining rights, and each must be listed separately for taxation.

"Where the ownership of coal is severed from the ownership of the soil, the fee in the coal is property, and, as such, is liable to its just share of taxation."

The case of *Sanderson v. Scranton*, 105 Pa. St. 469, illustrates the difference between a license to enter and mine and the grant of an estate in the minerals themselves, as bearing upon the question of taxation under the Pennsylvania statute. The syllabus reads:

"Where the surface of lands and the minerals in place thereunder have been severed by the agreement or conveyance of the owner, and the respective divisions have become vested in different owners, the municipal authorities are bound to levy their taxes according to the ownership and value of these divisions. And each owner can be made responsible only for the tax on his interest, whether underlying strata or surface.

"A. made an agreement with B., leasing to him *all the coal beneath the surface of a certain tract of land*, of which A. was the owner. The lessee was to mine and remove in each year at least a certain number of tons, which he was to pay for monthly, at a certain rate per ton, whether mined or not, unless mining should be prevented by certain specified contingencies. In case of neglect for thirty days to pay the said royalty, it might be distrained for. And for continued default the lease might be forfeited. The letting, however, was not for a term certain with reversion to the grantor, but without reversion and to be perpetual,

until all the coal under the surface had been mined. And the rights and privileges therein conferred were extended to the heirs, executors, administrators and assigns of the respective parties. *Held*, that this agreement was not merely a license or lease to mine coal to become the lessee's when mined, but that it operated as such a severance of the surface and subjacent strata, and a sale or assignment of the coal in place, as would relieve the owner of the surface from responsibility for taxes levied upon the coal." (See, also, *Peterson v. Hall*, 57 W. Va. 535, 50 S. E. 603, and *Barnes v. Bee*, 138 Fed. 476, interpreting the West Virginia tax law.)

In the case of *Mining Co. v. Crawford County*, 71 Kan. 276, 80 Pac. 601, this court held the statute under consideration to be valid, and applying it said:

"Minerals in the earth are real estate, and when the owner of them has not the fee to the surface of such land they should be separately assessed and taxed." (Syllabus.)

From all the foregoing it appears that the judgment of the district court in case No. 14,916 must be reversed and the cause remanded, with direction to overrule the demurrer to the petition, and it is so ordered.

Case No. 14,915 is in all respects similar to the one just decided, except that gas-wells have been drilled and the lessee is producing gas from them.

The development of the property, however, did not change the title to the mineral in place. The lessee, having nothing but the right to enter, operate for and procure gas, obtained no right to any specific quantity of it, and until gas is actually produced and severed so that it becomes personalty the legal title to, and the possession of, the entire volume remain in the owner of the strata in which it is confined. (*Stockbridge Iron Company v. Hudson Iron Company*, 107 Mass. 290, 322; *Kelly v. Keys, Appellant*, 213 Pa. St. 295, 62 Atl. 911, 110 Am. St. Rep. 547; *Knight v. The Indiana, etc., Co. et al.*, 47 Ind. 105, 17 Am. Rep. 692, opinion of the

court; *Barnhart et al., Appellants, v. Lockwood et al.,* 152 Pa. St. 82, 25 Atl. 237.)

Therefore the judgment of the district court in case No. 14,915 is reversed and the cause is remanded, with direction to overrule the demurrer to the petition.