THE MOUND CITY BRICK AND GAS COMPANY, *Appellant*, v. THE GOODSPEED GAS AND OIL COMPANY, *Appellee*.

No. 16,656.

SYLLABUS BY THE COURT.

1. TAXATION—*Minerals in Place Conveyed by Owner of Land—Oil and Gas.* Chapter 244 of the Laws of 1897, providing for the taxation of strata of minerals in land, the title to which has been vested in persons other than the owner of the surface, and imposing penalties for its violation, applies to oil and gas as well as to solid minerals.

2. —————— *Each Stratum Subject to Taxation as Real Property—Duty to Record Conveyance and List Property for Taxation.* When the different strata are severed by contract or conveyance, each layer or stratum is subject to be taxed separately as real property, and it is the duty of the owner, not only to record the instrument which conveyed the property to him within the time specified, but also to see that it is duly listed for taxation at the proper time.

3. —————— *Instrument Held to Sever Coal, Oil and Gas from Remainder of Land.* An instrument, called a lease, by which the owner of the land grants, conveys and warrants to another, his heirs, successors and assigns, all of the coal, oil and gas under a tract of land, together with the right to use the surface of the land so far as it is necessary in taking out the minerals so conveyed, the consideration being that the lessee shall give the lessor certain quantities of the coal and oil mined and a certain price per well for each gas well that shall be drilled and used, and also furnish the lessor gas sufficient to supply his residence, and, among other things, contains a provision that in a certain contingency the lessee shall reconvey the property to the lessor, operates to sever the coal, oil and gas from the remainder of the land; and the interest segregated and conveyed becomes subject to be separately taxed, and it is incumbent on the owner of the interest to list it for taxation.

Appeal from Linn district court. Opinion filed July 9, 1910. Affirmed.

STATEMENT.

THIS action was brought by the Mound City Gas, Coal and Oil Company, which had obtained an oil, coal and gas lease upon a tract of land of which Henry Carbon was the owner, against the Goodspeed Gas and Oil Company, which claimed a subsequent lease on the same premises. The following is a copy of the appellant's lease:

"In consideration of the sum of one dollar, the receipt of which is hereby duly acknowledged, and the covenants and agreements hereinafter contained, Henry Carbon, a widower, of Mound City, Kan., first party, hereby grants, conveys and warrants unto Robert Fleming, second party, his heirs, successors and assigns, all the oil, coal and gas in and under the following described premises, together with the right to enter thereon at all times for the purpose of drilling and operating for oil, coal, gas or water, to erect, maintain and remove all buildings, structures, pipes, pipe lines and machinery necessary for the production and transportation of oil, coal, gas, water, provided that the first party shall have the right to use said premises for farming purposes, except such part as is actually occupied by second party, namely, a lot of land situated in the township of the county of Linn, in the state of Kansas, and described as follows, to wit, the south half of the southeast quarter of section five (5), and the west half of section four (4), all in township 22, range 24, containing four hundred acres, more or less. The above grant is made on the following terms:

"(1) Said party agrees to drill a well upon said premises within two years from this date or thereafter pay to first party eighty ($80) dollars annually until said well is drilled, or this lease shall be void.

"(1½) Should coal be found a royalty of ten cents per ton of 2400 pounds for all coal mined shall be paid to said first party.

"(2) Should oil be found in paying quantities upon the premises second party agrees to deliver to first party in tanks, or in pipe lines with which it may connect the well or wells, the one-tenth part of all the oil produced and saved from said premises.

"(3) Should gas be found, second party agrees to pay

to first party fifty dollars annually for every well from which gas is used off the premises.

"(4) The first party shall be entitled to enough gas free of cost for domestic use in said residence on said premises as long as second party shall use gas off said premises under this contract, but shall lay and maintain the service pipe at his own expense, and use said gas at his own risk; the said party of the second part further to have the privilege of excavating for water, and of using sufficient water, gas and oil from the premises herein leased to run the necessary engines for the prosecution of said business.

"(5) Second party shall bury, when requested to do so by first party, all gas lines used to connect gas off said premises, and pay all damages to timber and crops by reason of drilling and burying, repairing or removal of lines of pipe over said premises.

"(6) No well shall be drilled nearer than 300 feet to any building now on said premises, nor occupy more than two acres.

"(7) Second party may at any time reconvey the premises hereby · granted, first removing any of his property that may be thereon, and thereupon this instrument shall be null and void.

"(8) A deposit to the credit of the lessor in Farmers' and Merchants' Bank, Mound City, Kan., to the amount of any of the money payments herein provided for, shall be payment under the terms of this lease.

"(9) If no well shall be drilled upon said premises within ten years from this date, second party agrees to reconvey and thereupon this instrument shall be null and void.

"(10) First party reserves to himself all oil and gas now on said premises, together with the right to drill wells on said premises for products to be used on said premises for domestic purposes.

"In witness whereof, the parties hereunto set their hands this —— day of June, A. D. 1902.

HENRY CARBON."

The execution of the foregoing instrument was duly acknowledged. An assignment of the lease to persons who organized the Mound City Gas, Coal and Oil Company was alleged. Among other defenses, the Goodspeed Gas and Oil Company alleged that the lease above

Gas Co. v. Oil Co.

set forth was not recorded nor listed for taxation within ninety days after its execution, and has never been listed for taxation. Afterward the Mound City Gas and Brick Company was substituted for the Mound City Gas, Coal and Oil Company, the title and interest of the latter company having passed to the substituted company. The court, on motion of the defendant, gave judgment on the pleadings in favor of the Goodspeed Gas and Oil Company, and the Mound City Gas and Brick Company appeals.

*James W. Reid,* and *John J. Jones,* for the appellant.

The opinion of the court was delivered by

JOHNSTON, C. J.: The only question presented for consideration is whether the failure of appellant to have the lease in question recorded within ninety days after its execution and to have the property listed for taxation renders the lease null and void. The trial court, it is stated, held that the lease was void for non-compliance with section 1 of chapter 244 of the Laws of 1897 (Gen. Stat. 1909, § 9334), which reads:

"That where the fee to the surface of any tract, parcel or lot of land is in any person or persons, natural or artificial, and the right or title to any minerals therein is in another or in others, the right to such minerals shall be valued and listed separately from the fee of said land, in separate entries and descriptions, and such land itself and said right to the minerals therein shall be separately taxed to the owners thereof respectively. The register of deeds shall furnish to the county clerk, who shall furnish on the first day of March each year to each assessor where such mineral reserves exist and are a matter of record, a certified description of all such reserves; provided, that when such reserves or leases are not recorded within ninety days after execution, they shall become void if not listed for taxation."

This provision has been interpreted and its validity upheld. (*Mining Co. v. Crawford County,* 71 Kan. 276; *Gas Co. v. Neosho County,* 75 Kan. 335.)   It is

argued that the act was only intended to apply to solid minerals, such as coal, lead and zinc, and that because of their peculiar attributes oil and gas are not capable of ownership in place and can not have been within the legislative purpose. The terms of the act are broad enough to embrace minerals of every kind, and it is well settled that oil and gas, although fugitive fluids, are minerals. (*Zinc Co. v. Freeman,* 68 Kan. 691; *Murray v. Allred,* 100 Tenn. 100.) It has also been determined that although oil and gas in place are a part of the realty, the stratum in which they are found is capable of severance, and by an appropriate writing the owner of the land may transfer the stratum containing oil and gas to another. Such party acquires an estate in and title to the stratum of oil and gas, and thereafter it becomes the subject of taxation, encumbrance or conveyance. (*Kurt v. Lanyon,* 72 Kan. 60; *Moore v. Griffin,* 72 Kan. 164; *Barrett v. Coal Co.,* 70 Kan. 649; *Chartiers Block Coal Co., Appellant, v. Mellon,* 152 Pa. St. 286.)

It being competent for an owner of land, by contract or conveyance, to sever an underlying layer or stratum of oil or gas from other parts of the land and thus vest the title of the layer in another, there remains the question whether the writing executed by Henry Carbon is sufficient to accomplish a severance of the mineral from the remainder of the land. The ordinary agreement giving the lessee the right to enter and explore for oil and gas and to sever and own any that may be found, paying a royalty to the owner of the land, is a license, which does not operate as a severance of the minerals. In *Gas Co. v. Neosho County,* 75 Kan. 335, the act providing for taxing separate mineral interests in lands was considered, and it was there pointed out that a lease of the type just mentioned grants no estate, gives no title, does not operate to sever the oil and gas from the land, and is therefore not separately taxable to the lessee. On the other hand, attention is called to an-

Gas Co. v. Oil Co.

other class of writings which do transfer an estate in
the mineral and operate to sever the ownership of the
oil and gas from the ownership of the surface. It will
be observed that the lease in question gives more than
a license, more than an incorporeal hereditament. It
"grants, conveys and warrants unto Robert Fleming,
second party, his heirs, successors and assigns, all the
oil, coal and gas in and under the following described
premises." In connection with the grant the right is
given to enter and use the surface so far as may be
necessary for the second party to avail himself of the
use and benefit of the part conveyed. The considera-
tion was a certain quantity of the coal and oil produced
and a certain amount annually for each gas well used,
together with gas sufficient to supply the residence of
the grantor. In another paragraph of the instrument
provision is made for the reconveyance of the premises
by the second party, it being stipulated that if no well
is drilled within ten years he shall reconvey the prop-
erty to the first party, and when this is done the instru-
ment first made shall be null and void. There is also
a provision that the first party reserves to himself oil
and gas for his own use on the premises for domestic
purposes. The language of the instrument is mani-
festly that of a grant, and not of a license. It pur-
ports to convey all of the coal, oil and gas underneath
the tract of land, instead of a privilege, or license, to
prospect for and to sever and own so much of it as the
lessee might find. It transfers at once, and makes him
the owner of, the minerals under this tract of land—a
very different thing from giving him the right to pros-
pect and to own only that which he finds and brings to
the surface. The character of the instrument is indi-
cated to some extent by the fact that the grant, together
with the accompanying rights and privileges, was ex-
tended to the heirs, successors and assigns of the
grantee. Then there is the reservation of oil and gas
for domestic purposes, by which the grantor proceeds

on the theory that he is taking back something out of that which was granted and which would have passed to the grantee but for the reservation. The name by which the writing is designated is not a matter of great consequence, as what is called a lease may as effectually transfer the minerals underneath a tract of land as a more formal instrument of conveyance. A severance, such as the statute in question contemplates, may be made by an exception or reservation in a deed, or by an express grant in any other instrument.

In *Sanderson v. Scranton,* 105 Pa. St. 469, where there was an agreement by an owner leasing all of the coal under the surface of land and providing that a certain quantity should be mined by the lessee each year, that monthly payments should be made by the lessee in proportion to the quantity mined, and extending the rights and privileges conferred by the lease to the heirs, executors, administrators and assigns, it was held "that this agreement was not merely a license or lease to mine coal to become the lessee's when mined, but it operated as such a severance of the surface and subjacent strata, and a sale or assignment of the coal in place, as would relieve the owner of the surface from responsibility for taxes levied upon the coal." (Syllabus. See, also, *Peterson v. Hall,* 57 W. Va. 535.)

We see no difference in applying the act to cases such as this, where the underlying strata of land have become vested in different owners. Counsel for appellant say the lease or reserve must be taxed, if at all, as personal property, and suggest difficulties in determining the situs of such property. It is the interests or estates severed and created which are to be taxed, and not the instrument creating the separate interests. In *Gas Co. v. Neosho County,* 75 Kan. 335, it was demonstrated that the mineral rights carved out and made subject to taxation were to be treated as realty, and not as personal property. It was said:

"It is contemplated that there shall be an estate con-

sisting of what is left after the mineral rights have been carved out, and that there shall be an estate consisting of the mineral rights which have been segregated. The statute further contemplates that each estate must vest in a separate person. The respective proprietors are called 'owners,' and the estate in the minerals is nothing short of the right or title to the minerals themselves as they lie in the ground." (p. 338.)

In *Mining Co. v. Crawford County*, 71 Kan. 276, it was suggested that there would be difficulty in enforcing the act and in the assessment of such segregated property, but the suggestion was met by saying that the value of such property might be ascertained and the assessment made under the general rules governing the assessment of real property. As it is the interest in the land and not the instrument which transfers the interest that is taxed, the indefiniteness which counsel see in the act largely disappears. The lease does not become void by the mere failure to record it, but only when there is the additional delinquency of omitting to list it for taxation. If it is recorded as the statute enjoins, the taxing officer has an opportunity to find and assess the property conveyed by it; and if the owners omit to record the lease and also omit to list it, and thus bring it to the attention of the taxing officials within the time fixed for listing property, the lease then becomes void, and may be so declared by the court at the instance of any interested party. As the owner of the interest in question failed to record the lease within the prescribed time, and also failed to list the property for taxation, the lease was a nullity, and the judgment of the trial court deciding that it was void is affirmed.