No. 33,325

John W. Shaffer, *Appellant*, v. The Kansas Farmers Union Royalty Company, and The Flag Oil Company, *Appellees.*

(69 P. 2d 4)

Opinion filed June 12, 1937.

*Oscar Ostrum* and *Frances K. Seeley*, both of Russell, for the appellant; *J. E. Driscoll*, of Russell, of counsel.

*C. W. Burch, B. I. Litowich, LaRue Royce, L. E. Clevenger, E. S. Hampton, R. E. Haggart*, all of Salina, and *S. H. King*, of Blackwell, Okla., for the appellees.

The opinion of the court was delivered by

Harvey, J.: This was an action to quiet title. Defendants prevailed, and plaintiff has appealed.

More specifically plaintiff sought to set aside a "mineral deed" executed by plaintiff to defendants on land owned by him, on the grounds: (1) That the conveyance was not recorded within ninety days, or listed for taxation as required by G. S. 1935, 79-420; (2) that it was without any legal or valid consideration; (3) that the purported consideration consisted of a share of stock which defendants were not at the time authorized to issue; and (4) that plaintiff was induced to execute the instrument by certain alleged false and fraudulent representations. Plaintiff tendered into court the stock issued to him in exchange for the mineral deed and offered

to reassign the same. The mineral deed in question, which was signed by plaintiff and duly acknowledged, reads as follows:

"Know all men by these presents, That John W. Shaffer and Martha Catherine Shaffer, his wife, of Bunker Hill, Russel county, state of Kansas, for and in consideration of the sum of one dollar, cash in hand paid by the Kansas Farmers Union Royalty Company and Flag Oil Company, hereinafter called guarantees, and other good and valuable considerations the receipt of which is hereby acknowledged, have granted, sold, conveyed, assigned and delivered, and by these presents do grant, sell, convey, assign and deliver unto said grantees an undivided one-half interest, in the proportion of three-fourths (¾) and one-fourth (¼) interest therein, respectively, to the said grantees, in and to the oil, gas and other minerals in and under, and that may be produced from" (certain described land), "together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said lands for oil, gas and other minerals and removing the same therefrom.

"Said land being now under an oil and gas lease executed in favor of H. C. Schumacher, Bunker Hill, Kansas, it is understood and agreed that this sale is made subject to the terms of said lease, and covers and includes one half of all of the oil royalty, and gas rental or royalty due and to be paid under the terms of said lease insofar as it covers the lands above described.

"It is understood and agreed that one half of the money, or other bonus, which is paid for any future oil and gas lease or leases, which may be placed upon the above described land and one half of the money rentals which may be paid to extend the terms within which a well may be commenced under the terms of said lease, or leases, shall be paid to and be the property of the grantees.

"To have and to hold the above-described property, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said grantees herein, their respective successors and assigns, for a period of fifty years and as long thereafter as oil and gas may be produced therefrom; and we do hereby bind ourselves and our heirs, executors and administrators to warrant and forever defend all and singular the said property unto the said grantees herein, their respective successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

"It is hereby further expressly agreed that the grantees accept this conveyance subject to any mortgage loan now existing against the above-described land or any renewal thereof on the same, or on new, modified or qualified terms and conditions; and that this grant of mineral and royalty rights shall at all times be subject to, inferior and subordinate to any future mortgage loan which may be applied for and placed on the land by the grantor herein, and the same shall have the same force, effect, validity and priority as if executed, delivered and recorded prior to the date of execution, delivery and recording of this mineral grant."

It is not necessary to detail the pleadings, since the case was tried on an agreed statement of facts, which we summarize as follows: The Kansas Farmers Union Royalty Company, hereinafter called

the royalty company, is a corporation duly organized October 16, 1929, under the laws of the state of Kansas. It is a landowners' coöperative mineral resources pooling organization. Its original stockholders were landowners who transferred to it undivided interests or what is sometimes referred to as "head rights" in mineral resources in consideration for the issuance of one share of stock in the company for each undivided interest in mineral resources in, under, and produced from each unit of land consisting of 160 acres. Stock cannot be acquired from the company in any manner other than by the transfer of such undivided interest or head rights in mineral resources in consideration for the issuance of the stock. The company obtained from the bank commissioner a permit under the Kansas speculative securities act to sell its stock in the manner above outlined, November 13, 1929, which permit is still in good standing. The company was organized through the activities of one Aldrich Blake and his associates. The sale of its shares in exchange for mineral rights was presented to landowners in various counties of the state by paid agents. Such agents were authorized and directed to state and represent to landowners and farmers that seventy-five percent of the mineral interests conveyed to the royalty company would be held by it exclusively for profits and dividends to stockholders, and that the other twenty-five percent would be conveyed to Aldrich Blake, or his nominee, to defray the expense of organization of the pool. The stipulation details how Blake obtained the money to finance the organization of the company by transactions at Oklahoma City with the Flag Oil Company, a corporation organized under the laws of Oklahoma and authorized to transact business in Kansas as a foreign corporation. These details are not important here. It is further stipulated that on October 17, 1929, plaintiff made written application to the royalty company for issuance to him of one share of stock in consideration of his transfer to that company and the Flag Oil Company of an undivided one-half interest in and to the oil, gas and other minerals in and under and that may be produced from the land described in the petition. Accompanying the application was the mineral deed hereinbefore set out; that the application was accepted and the royalty company issued and delivered to plaintiff one share of its stock on or after December 9, 1929, and that the mineral deed was duly recorded in the office of the register of deeds of Russell county May 3, 1930. At the date of the mineral deed the land involved was unimproved

and undeveloped territory, and there is now no production upon the land. About February 8, 1930, certain petroleum geologists and engineers appraised the mineral resources of the royalty company, which at that time consisted of 133,700 acres, at a total value of $183,417. Upon August 15, 1935, the mineral rights of the defendants in and under, or that may be produced from the land involved, together with others obtained under similar circumstances, were submitted to the county clerk of Russell county to be listed for taxation. Similar rights had been submitted to the county clerk of Saline county in 1931 and held not to be taxable. In February, 1933, the company submitted to the tax commissioner of the state of Kansas copies of the royalty conveyances, with the request that it be advised as to whether these interests were taxable as realty or personalty, and was advised by the attorney of the tax commission, in a written opinion, which expressed it as his opinion that they were taxable as personalty under G. S. 1935, 79-329; that plaintiff participated in a stockholders' meeting of the royalty company by designating, in writing, a proxy to act for him at a special meeting on August 2, 1930, at the annual meeting of 1931, the annual meeting of 1934, and the annual meeting of 1935, and that in November, 1930, he received a dividend of one dollar per share on his stock for the first year; that until shortly before the present action was filed the plaintiff had no personal knowledge the deeds were not recorded until more than ninety days after the delivery thereof. The acreage and assets of the royalty company consisted entirely of undivided interests in mineral rights in undeveloped oil and gas lands in Kansas.

Upon these agreed facts the case was submitted to the court. The court made findings of fact and conclusions of law as follows: (1) That the mineral deed involved in this case does not operate as a severance of the mineral deposits from the soil and the balance of the real estate, and that therefore the provisions of G. S. 1935, 79-420, do not apply; (2) that the transactions involved herein were initiated and subscriptions to the stock of the defendant royalty company sold after its organization, but before it obtained a permit under the speculative securities act to sell its stock, and were therefore in violation of certain provisions of our statute, but that plaintiff's cause of action, insofar as the application of the securities act is involved, is barred by the express provisions of G. S. 1935, 17-

1240; (3) that there was no fraud or failure of consideration proven; (4) that judgment should be rendered for defendants.

Plaintiff's motion for a new trial was overruled and he has appealed.

On this appeal we need not concern ourselves about plaintiff's original claim of right to set aside the mineral deed on the ground the royalty company had not complied with our securities act at the time of the transaction, since this action was not brought within three years, and the trial court correctly held relief on that ground was barred by the specific provisions of our statute (G. S. 1935, 17-1240). Neither are we concerned with plaintiff's original claim of fraud which induced him to execute the mineral deed, or his claim that it was without consideration, or that the consideration therefor had failed, since there is nothing in the stipulated facts to sustain these allegations, and the trial court found they were not proved.

The appeal presents the question, Is the mineral deed such an instrument as comes within the purview of G. S. 1935, 79-420? If not, that ends the matter. If it comes within the statute, then other questions must be considered pertaining to the rights of the parties under the stipulated facts and the validity and application of the statute. This statute was originally enacted in 1897 (Laws 1897, ch. 244), was reënacted in 1911 (Laws 1911, ch. 316, § 20), and appears as section 79-420 in our Revised Statutes of 1923 and in our General Statutes of 1935. The language has not been changed since it was first enacted forty years ago. It reads:

"That where the fee to the surface of any tract, parcel or lot of land is in any person or persons, natural or artificial, and the right or title to any minerals therein is in another or in others, the right to such minerals shall be valued and listed separately from the fee of said land, in separate entries and descriptions, and such land itself and said right to the minerals therein shall be separately taxed to the owners thereof respectively. The register of deeds shall furnish to the county clerk, who shall furnish on the first day of March each year to each assessor where such mineral reserves exist and are a matter of record, a certified description of all such reserves: *Provided*, That when such reserves or leases are not recorded within ninety days after execution, they shall become void if not listed for taxation."

It is well settled in this state that petroleum and natural gas are minerals and as long as they remain in the ground are a part of the realty and belong to the owner of the land. (*Zinc Co. v. Freeman,* 68 Kan. 691, 75 Pac. 995.) That is true notwithstanding the fact they are fugitive fluids. (*Gas Co. v. Oil Co.,* 83 Kan. 136, 140,

109 Pac. 1002.) When land contains minerals there may be separate ownership of the minerals in one person and the remainder of the land in another. This separate ownership may be accomplished by the owner of the entire estate in the land conveying all of it except the minerals, or by conveying the minerals only. (*Mining Co. v. Atkinson*, 85 Kan. 357, 360, 116 Pac. 499.) An owner of land may convey all of it, or part of it. When he conveys but a part of it he may divide it vertically or horizontally, and he may convey full title, or a fractional interest in the whole or in any part.

Generally speaking, in this state as well as elsewhere, oil operators do not care to own the entire estate in oil- or gas-producing lands. They operate in the main under one of two types of instruments executed by the landowner. One of these, and the one used for operating purposes, is what is commonly known as an oil and gas lease. While these are not all uniform as to their provisions, basically they authorize the lessee or grantee named therein to go upon the land and explore and produce oil or gas therefrom. Under such instruments the lessee has the exclusive right to produce oil and gas from the premises for the time named in the lease, and to that extent may be said to have an interest in the oil or gas in or under the ground, but the actual title thereto does not pass from the landowner to the lessee until it is brought to the surface and separated from the land. The rights of such operators have been discussed and defined in many of our decisions and different terms applied to the instrument itself, or to the rights of the parties thereunder. (*Dickey v. Brick Co.*, 69 Kan. 106, 76 Pac. 398; *Gas Co. v. Neosho County*, 75 Kan. 335, 339, 89 Pac. 750; *Oil Co. v. McEvoy*, 75 Kan. 515, 517, 89 Pac. 1048; *Brick Co. v. Bailey*, 76 Kan. 42, 45, 90 Pac. 803; *Phillips v. Oil Co.*, 76 Kan. 783, 784, 92 Pac. 1119; *White v. Green*, 103 Kan. 405, 407, 173 Pac. 974; *Brinkman v. Empire Gas & Fuel Co.*, 120 Kan. 602, 607, 609, 245 Pac. 107; *Burden v. Gypsy Oil Co.*, 141 Kan. 147, 150, 40 P. 2d 463.)

We are not attempting here to make any new definition of the rights of the parties under such an instrument, or to coin any new term to apply to such rights, but simply desire to point out that these instruments are designed for the actual production of oil or gas from land, and ordinarily the lessee has no permanent interest in the land if oil or gas is not found therein. Our statutes recognize that these oil and gas leases may be valuable in and of themselves, and provide a method for their taxation. (G. S. 1935, 79-329 to 79-334; *Robinson v. Jones*, 119 Kan. 609, 240 Pac. 957.)

The other type of instrument frequently used in the oil fields of this and other states is one by which the owner of land conveys to another the oil and gas, or some fraction of it, in or under his land. Various names have been applied to such conveyances. Perhaps the term "mineral deed" used in this case is the most appropriate. (See Glassmire, Oil and Gas Leases and Royalties, § 15, *et seq.*) The forms of these instruments are not always the same; one may contain provisions omitted from another; but in the main their design and purpose is to convey to the grantee the oil or gas in or under the land, or some fraction of it, without regard to when or by whom it may be produced and brought to the surface. The grantee in such an instrument becomes the owner of all or the stated portion of the oil and gas in the land. Our legislature has recognized that such an ownership may be valuable and is property distinct from the remainder of the land, and has provided for its taxation separate and apart from the taxation of the remaining portion of the land. (G. S. 1935, 79-420.) This statute applies whenever the mineral in the land is owned separately from the other portion of the land. (*Barrett v. Coal Co.,* 70 Kan. 649, 79 Pac. 150; *Mining Co. v. Crawford County,* 71 Kan. 276, 80 Pac. 601; *Kurt v. Lanyon,* 72 Kan. 60, 82 Pac. 459; *Moore v. Griffin,* 72 Kan. 164, 83 Pac. 395; *Gas Co. v. Neosho County,* 75 Kan. 335, 89 Pac. 750; *Gas Co. v. Oil Co.,* 83 Kan. 136, 109 Pac. 1002; *Horville v. Cement Co.,* 105 Kan. 305, 182 Pac. 548; *Robinson v. Jones,* 119 Kan. 609, 613, 240 Pac. 957; *Richards v. Shearer,* 145 Kan. 88, 64 P. 2d 56.)

In a few instances the contention has been made that the instrument then being considered was a conveyance of minerals in place, but this court on examination of the instrument found to the contrary. (*Finch v. Beyer,* 94 Kan. 525, 146 Pac. 1141; *Hover v. McNeill,* 102 Kan. 492, 175 Pac. 150; *Luman v. Davis,* 108 Kan. 801, 196 Pac. 1078.)

Examining this instrument, we note that the landowner by it "granted, sold, conveyed, assigned and delivered" (perhaps the word "assigned" has no special significance, but the other words do), "and by these presents do grant, sell, convey, assign and deliver unto said grantees an undivided one-half interest . . . in and to the oil, gas and other minerals in and under, and that may be produced from" the land (this is language specifically adapted to a grant or conveyance of real property), "together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring

said lands for oil, gas and other minerals and removing the same therefrom." This language does not make the instrument one for drilling and producing oil, but more properly is a statement of the right of the owner of the oil to have some means of getting it. That it was not designed for an operating oil and gas lease is disclosed by the fact that it is subject to an existing oil and gas lease and contemplates that oil and gas leases may be made hereafter. With respect to such leases it provides that one half the lease money, whether bonus, rental or royalty, shall be paid to the grantees of the instrument, which of course they are entitled to only in the event they are the owners of one half of the oil and gas in the land. It contains covenants of seizin and warranty common in conveyances of real property. It specifically refers to the instrument as a "grant of mineral and royalty rights" and provides that it shall be subject to any mortgage then existing against the land (possibly an unnecessary provision) and consents that it will be subject to future mortgages. Considered as a whole, it is clear it is a conveyance of a part of the oil and gas and other minerals in the land. The stipulated facts emphasize this view. It is there agreed the royalty company is a "mineral resources pooling organization." Its stockholders were landowners who transferred to it "undivided interest . . . in mineral resources." Its stock cannot be acquired except by the transfer to it of undivided interest "in mineral resources." It states that plaintiff made application for issuance to him of one share of stock, in consideration of his transfer "of an undivided one-half interest in and to the oil, gas and other minerals in and under, and that may be produced from" the land described, and accompanied his application with a "mineral deed;" that the application was accepted, and that "the mineral deed was duly recorded;" that engineers "appraised the mineral resources" of the company at less than $1.50 an acre, and that the assets of the royalty company consisted entirely of "undivided interest in mineral rights" in land. We think it clear that the instrument in question should be classified as one which conveyed "the right or title to any minerals" within the meaning of G. S. 1935, 79-420, and that the trial court erred in holding to the contrary.

Appellees point out two things in the instrument which, they argue, take it out of the class of instruments conveying minerals in place. It will be observed the instrument conveys the undivided half of "the oil, gas and other minerals in and under, and that may

be produced from" the land. Appellees point to the words "and may be produced from" as indicating that production only is what the parties had in mind. The point is not well taken. It is not a limitation upon the grant of "oil, gas and other minerals in and under" the land. Possibly the clauses referred to two things, but that construction would not prevent the instrument being a conveyance of minerals in the land. More likely the latter clause was used because oil and gas are to some extent fugitive fluids and the parties desired to make it clear that it applied to the oil and gas under the land at the time operations thereon produced oil and gas therefrom, avoiding any possible necessity of having to show that they were in or under the land at the time the instrument was executed.

Another provision of the mineral deed pointed to by appellees is the one in which it is consented that the rights of the grantees therein may be subject to and inferior to future mortgages. The most we can see in this provision is that it is a consent on the part of the grantees that their property, namely, the oil, gas, or other minerals in the land, may be used at some time in the future as security for the debt of the grantor. That agreement would not of itself change title from one party to the other. (*Schmidt v. Sullivan,* 145 Kan. 627, 66 P. 2d 548.)

We now consider the effect of the statute (G. S. 1935, 79-420), which, among other things, provides that when instruments of this character "are not recorded within ninety days after execution, they shall become void if not listed for taxation." The mineral deed in this case was executed October 17, 1929, recorded May 3, 1930, and was specifically listed for taxation August 15, 1935, which was after this action was filed. Appellant contends the mineral deed became void by virtue of this statute. Appellees contend the statute is invalid if so construed.

*Mining Co. v. Crawford County,* 71 Kan. 276, 80 Pac. 601 (1905), was the first case to reach this court construing this statute (Laws 1897, ch. 244, now G. S. 1935, 79-420). It appears the coal company held recorded mineral deeds to land in Crawford county. In 1898 the mineral rights conveyed by these deeds were taxed under this statute separately from the remainder of the land. These taxes were not paid, and in 1899 the mineral rights were advertised and sold for taxes of 1898, as other lands on which taxes for 1898 were not paid were advertised and sold, and in 1902 there was published the statutory notice of final redemption and deeds to be issued as for

other real property sold for taxes and unredeemed in three years. The coal company, holder of such mineral deed, sued to enjoin the issuance of the tax deed. The trial court sustained a demurrer to the petition. Plaintiff appealed to this court and contended, (1) that the minerals, being a part of the land, were assessed with it, and that the taxes had been paid by the owner of the land; (2) that the statute was void in that it provided an unequal and inequitable valuation and assessment, in violation of our constitution (art. 11, § 1); (3) that the statute was an independent act and provided no method of assessing the tax, nor any provision for its collection, and hence was inoperative. This court denied all these contentions and specifically held the statute to be a part of the general tax laws of the state and should be construed with them, and that other sections of the statute should be looked to for methods of assessment and collection; and further held:

"Minerals in the earth are real estate, and when the owner of them has not the fee to the surface of such land they should be separately assessed and taxed." (Syl. ¶ 2.)

*Kurt v. Lanyon,* 72 Kan. 60, 82 Pac. 459, and *Moore v. Griffin,* 72 Kan. 164, 83 Pac. 395, were cases in which oil and gas are held to be minerals, and that the instruments construed segregated the title to such minerals from the remainder of the land.

In *Gas Co. v. Neosho County,* 75 Kan. 335, 89 Pac. 750, plaintiff was the owner of oil and gas leases on land in Neosho county. The county officials undertook to tax separately the land, and to tax these mineral holdings separately from the land. The taxes were not paid, and the treasurer was about to sell the "mineral reserve" of the land described in the leases when plaintiff brought an action to enjoin the sale and set aside the tax. The court construed the instruments owned by plaintiff and held them simply to be oil and gas leases; that they created no estate in the land, or in the oil and gas which the land contained, but gave a license to enter and explore for oil and gas, and if these were discovered, to produce and sever. In doing so the court commented upon the statute now in question and said:

"It is contemplated that there shall be an estate consisting of what is left after the mineral rights have been carved out, and that there shall be an estate consisting of the mineral rights which have been segregated. The statute further contemplates that each estate must vest in a separate person. The respective proprietors are called 'owners,' and the estate in the minerals is nothing short of the right or title to the minerals themselves as they lie in the ground.

"When such a state of affairs exists the statute regards the owner of the mineral rights as the proprietor of a distinct item of property which is taxable to him apart from that which is taxable to the owner of the tract, parcel or lot in which the minerals are located, and it makes provisions for separate lists, entries, descriptions, valuations, etc. The right or title to the minerals, as the statute expresses it, is taxed as realty. The owner is charged with taxes according to the value of his interest, and the owner of the overlying strata is taxed according to the value of the remaining interest in the land. But there must be a severance of the right to the mineral and the nonmineral portions of the land, respectively, before there can be a division in taxation.

"Minerals in place being real estate, the act assumes that instruments creating separate interests in them will be placed of record, but it provides that if such instruments are not recorded within ninety days after execution they shall become void, unless they are brought to the attention of the tax officials so that the purpose of the first part of the section may be accomplished."

*Gas Co. v. Oil Co.*, 83 Kan. 136, 109 Pac. 1002, is the next case construing the statute, and it was held the statute "applies to oil and gas as well as to solid minerals." The instrument before the court, called a lease, was examined and held "to sever the coal, oil and gas from the remainder of the land." It was further held:

"When the different strata are severed by contract or conveyance, each layer or stratum is subject to be taxed separately as real property, and it is the duty of the owner, not only to record the instrument which conveyed the property to him within the time specified, but also to see that it is duly listed for taxation at the proper time."

Aside from construing the instrument and stating the purpose of the statute, the only question presented to this court was whether the failure of the grantee of the instrument to record it in ninety days after it was executed, and to have the property listed for taxation, rendered the instrument null and void. The trial court had held the instrument void for these reasons, and this court affirmed that judgment. In the opinion it was said:

"The lease does not become void by the mere failure to record it, but only when there is the additional delinquency of omitting to list it for taxation. If it is recorded as the statute enjoins, the taxing officer has an opportunity to find and assess the property conveyed by it; and if the owners omit to record the lease and also omit to list it, and thus bring it to the attention of the taxing officials within the time fixed for listing property, the lease then becomes void, and may be so declared by the court at the instance of any interested party." (p. 143.)

In *Horville v. Cement Co.*, 105 Kan. 305, 182 Pac. 548, the owner of real property brought an action to quiet his title against a deed which conveyed the gas or the oil and gas in the land, upon the ground, among others, that it had not been filed for record within

ninety days after it was executed; and at the trial showed also that it had not been listed for taxation, the petition being regarded as having been amended to include an allegation to that effect. The action was brought more than ten years after the mineral deed was executed. The trial court held it void upon the ground that it had not been recorded and listed for taxation as required by statute (G. S. 1935, 79-420). Upon appeal that judgment was affirmed.

In *Richards v. Shearer*, 145 Kan. 88, 64 P. 2d 56, the instrument in question was held to be a conveyance which effected a severance of the oil and gas in place, and hence should be recorded and listed for taxation as required by statute. The instrument was not recorded within ninety days, but was recorded before the first of March after its execution. This recording was held to constitute the necessary listing for taxation, within the meaning of the statute, in view of the fact that after it was recorded it became the duty of the register of deeds to furnish to the county clerk, and he to the county assessor, by March first, a list of such properties for the purpose of taxation. The recording was in time for that purpose.

Here the facts do not bring it within the rule of the case last cited. Had the instrument been filed for record before March first there would have been reason to hold the case applicable, but here it was not filed until May third, which was more than two months after the time it should have been certified to the county assessor for taxation. We also observe in this case that the filing for record was not deemed by the royalty company to be a listing for taxation. A year later the royalty company submitted similar rights to the county clerk of Saline county for taxation, and nearly two years later asked the advice of the state tax commission and received the personal opinion of its attorney. It was not until after this action was brought that the mineral deed was specifically listed for taxation in the county where the land was situated.

Appellees argue that the statute in question provided no method for the assessment of the property, or the collection of the tax. Those questions were answered in *Oil Co. v. Gas Co.*, supra. They further argue that since the land in question is undeveloped oil territory, there would be no method of ascertaining the value of its mineral rights. Under the stipulated facts all of the assets are of this class of property, yet its appraisers found them to be of the value of more than $180,000. Proportionately that would be about $220 for the value of the mineral deed in question. If appellees' appraisers could determine the value, we see no reason why assessors

could not do so. The fact that the value might be small in any one tract is no reason why it should not have been listed for taxation, or, assuming that all of its properties were of small value as to each tract, that its entire property should escape taxation.

Appellees argue the statute should not apply because they have not all of the mineral rights, but a fractional part of them only, and point out that our statute for the assessment of real property does not assess separately the interest of cotenants. While that is true as to real property generally, we see no legal reason why it could not be otherwise. The statute in question provides for the listing and assessing of the "right or title to any mineral." We think this clearly authorizes the assessment of a fractional interest in the mineral.

Appellees contend the word "void," as used in the proviso of this statute, should be construed to mean "voidable." The statute never has been so construed, although an examination of the briefs in our previous cases dealing with the statute show that a similar argument was made in some of them. Obviously the statute had a public purpose in view, namely, the proper listing of property for taxation. Aside from the fact that the legislature used the word "void,"— presumably knowing its meaning, it is uniformly held that when a word is used in the statute having a public policy in view, which requires the strict interpretation of the word, it will be construed in its strict sense (67 C. J. 268) as meaning a nullity. So construed, it is readily comprehensible and made effective. To construe it as voidable only would open the door for many interpretations.

Appellees argue that appellant is estopped, and that he has ratified the transaction by reason of the fact that he signed proxies to someone to represent him at special and annual meetings, and received a dividend of one dollar. The trial court did not find there was any estoppel, and there has been no cross-appeal. It is stipulated plaintiff did not know of appellees' dereliction in recording the instrument and listing it for taxation until shortly before the action was brought, hence there cannot be said to be ratification. More than that, one cannot ratify a void act nor ordinarily be estopped from raising the question of its validity.

From what has been said it necessarily follows the judgment of the court below must be reversed, with directions to set aside the mineral deed and to quiet plaintiff's title as against the holders thereof. It is so ordered.

ALLEN, J., dissenting.