**DONNELL et al. v. OTTS et al. (No. 9525.)**

(Court of Civil Appeals of Texas. Fort Worth. March 12, 1921.)

1. **Mines and minerals ⟨key⟩55(2)—Clause held exception and not reservation of mineral rights.**

In a general warranty deed by grantor and wife of 160 acres, a clause reciting that the grantor did "reserve and hold all minerals of all and any kind (except stone coal) that may be on the aforesaid land for my own use and benefit" *held* not a mere personal reservation or license in favor of the grantor and ending at his death, but an exception of the oil and minerals in the land, wholly withdrawing the mineral rights from the operation of the conveyance, so that the mineral interest on grantor's death passed by inheritance to his heirs; and it was immaterial that the word "on" was used, instead of the word "in," and that the reservation was to the grantor alone, and not to both him and his wife, and that there was no specific reservation of the right to enter on the surface for the purpose of drilling and developing for oil and gas; these being incidental privileges essential to the existence of the mineral right, and therefore necessarily implied from the exception.

2. **Deeds ⟨key⟩138—"Exceptions" and "reservations" distinguished.**

A "reservation" is a clause in a deed creating or reserving something out of the thing granted that was not in existence before, while an "exception" is something existing before as a part of the thing granted, and which is excepted from the operation of the conveyance (citing Words and Phrases, Exception).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Reservation.]

3. **Estoppel ⟨key⟩38—Conveyance by heirs with warranty passed their interest, later acquired on death of their ancestor.**

Where sons of the grantor in a deed excepting mineral rights conveyed the land by warranty deeds, which, being without limitation, conveyed full fee-simple title, under Vernon's Sayles' Ann. Civ. St. 1914, art. 1106, on the death of the grantor, they and those in privity with them by inheritance or by purchase were estopped from claiming as against their grantees their share inherited from the grantor in the mineral rights so excepted.

Appeal from District Court, Stephens County; W. R. Ely, Judge.

Consolidated suit by Mrs. John Otts and others against G. L. Donnell and others. From judgment for plaintiffs, defendants appeal. Affirmed.

Arnold & Arnold, of Graham, and W. J. Oxford and John Hancock, both of Thurber, for appellants.

M. D. Brown, of New Castle, S. C. Padelford, of Fort Worth, and M. L. Arnington, of Granbury, for appellees.

CONNER, C. J. [1] This is a consolidated suit in which the appellees are claiming the mineral rights in a survey of 160 acres of land in Stephens county, as heirs of D. H. Pruitt, Sr. The survey was patented by the state of Texas to D. H. Pruitt, Sr., on the 10th day of January, 1883. On March 14, 1888, D. H. Pruitt, joined by his wife, Lucinda Pruitt, for a recited consideration of $125, duly executed and delivered to Robert L. Pruitt, their son, a general warranty deed conveying the 160 acres of land so patented. The deed, however, contained the following exception or reservation:

"But it is agreed upon and stipulated by and between all parties that I, D. H. Pruitt, Sr., do reserve and hold all minerals of all and any kind (except stone coal) that may be on the aforesaid land for my own use and benefit."

Thereafter, on December 29, 1891, R. L. Pruitt executed and delivered to his brother, M. V. Pruitt, a general warranty deed without exception or reservation, conveying the land so patented and so conveyed to him by his father, D. H. Pruitt, Sr. By mesne conveyances from and under M. V. Pruitt, all without exception or reservation of any kind, the land appears to have been finally acquired by G. L. Donnell, who, joined by his wife, on August 19, 1916, executed and delivered to the appellant Texas Pacific Coal & Oil Company an oil and gas lease in the ordinary form, under which the said company and the Sun Company, an assignee, are now claiming.

D. H. Pruitt, Sr., died between the years 1890 and 1894, and his wife died in March, 1899. A consideration of the record makes it evident that the court below proceeded upon the theory that the exception or reservation in the deed from D. H. Pruitt, Sr., to his son, R. L. Pruitt, had the effect of wholly withdrawing from the operation of the conveyance the oil and minerals in the land, and that therefore, upon the death of D. H. Pruitt, Sr., in 1893, the mineral interest so excepted from the operation of the deed passed by inheritance to his heirs, the appellees in this case.

[2] The contentions of appellants are that the provision referred to is not an exception, but a mere personal reservation or license in favor of the said D. H. Pruitt, Sr.,

---

⟨key⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

which ended at his death, and that hence the right to the minerals in the land set forth passed by estoppel to the vendees of R. L. Pruitt and M. V. Pruitt by virtue of their general warranty deeds. These contentions present material questions for our determination.

We will restate the provision in the deed of D. H. Pruitt, Sr., upon which the questions depend. It is:

"But it is agreed upon and stipulated by and between all parties that I, D. H. Pruitt, Sr., do reserve and hold all minerals of all and any kind (except stone coal) that may be on the aforesaid land for my own use and benefit."

In 7 Words and Phrases, p. 6140, under the title of "Reservation," it is said:

"A reservation is a clause in a deed creating or reserving something out of the thing granted that was not in existence before"—citing numerous authorities.

Again it is said:

"A reservation in a deed is something created out of the granted premises by force and effect of the reservation itself, as an easement out of land granted, or rent out of premises devised."

It is further said:

"A reservation is a proviso in a deed which reserves to the grantor some new right or interest in the thing granted, not before existing in him, operating by way of an implied grant. If it does not contain words of inheritance, it will only give an estate for the life of the grantor."

Numerous other definitions of the term "reservation" are given in the authorities cited, but those quoted are sufficient, we think, for our purposes.

The term "exception," as used in grants or contracts, has been frequently defined. In 3 Words and Phrases, p. 2538 et seq., the following is given:

"An 'exception,' as the term is used with reference to contracts, is the taking some part of the subject-matter of the contract out of it."

Again:

"An exception in a deed or other instrument is something existing before as a part of the thing granted, and which is excepted from the operation of the conveyance."

The definitions quoted fairly present the view of the great weight of decided cases. See 8 R. C. L. p. 1089, § 147, and following; 2 Devlin on Deeds, § 979 et seq. In the latter authority, in section 980, it is said:

"The terms 'exception' and 'reservation' are often used indiscriminately, and sometimes in a deed what purports to be a reservation has the force of an exception. Mr. Justice Woodward, after reviewing some authorities, says: 'Thus it appears upon sufficient authority that words of reservation may operate by way of exception, and to have any effect must do so when the subject of the reservation is not something newly created, as a rent or other interest strictly incorporeal, but is a thing corporate and in esse when the grant is made.' * * * Where a grantor conveys land, 'saving and reserving, nevertheless, for his own use the coal contained in the said piece or parcel of land, together with free ingress and egress by wagon road to haul the coal therefrom as wanted,' the clause operates as an exception, and the grantor retains the entire and perpetual property in the coal."

In the case of Barrett v. Kansas & T. Coal Co., 70 Kan. 649, 79 Pac. 150, the deed under consideration contained the following provision:

"This deed is made subject to the following exceptions, reservations and conditions, to wit: * * * The said party of the first part hereby reserves the coal and other minerals underlying said land."

It was said by the Supreme Court of Kansas that the provision constituted an exception, and not a reservation, and that the title to the coal remained in the grantor, and not a mere easement to go upon the land to claim it.

In Preston v. White, 57 W. Va. 278, 50 S. E. 236, it was held by the Supreme Court of Appeals of West Virginia that petroleum oil and natural gas are minerals, and, in their places, are real estate and part of the land, and that a deed conveying a tract of land containing the clause, "But it is expressly understood and agreed that there is reserved from and not included in the above sale or conveyance seven-eighths of all and any oil and gas that may be on, in, or under said land, with full right and privilege to said Bennett, his heirs and assigns, to develop and operate the same," did not pass the oil and gas in place in the land to the grantee, but that, on the contrary, these minerals remained vested in the grantor as an actual, vested estate and property, and not an incorporeal hereditament in him, nor a mere license to produce oil and gas, and that a subsequent conveyance by such grantor of such oil and gas vested in the grantee like estate and property in the oil and gas as was vested in such grantor.

Numerous other illustrations might be given, but in the interest of brevity we will merely further cite 34 Century Digest, §§ 153 to 165, under the title "Mines and Minerals." In the light of these authorities, it seems clear to us that by the provision in the deed of D. H. Pruitt, Sr., all minerals, including oil and gas, were excepted from the operation of the conveyance, and the title and right to such minerals remained in the grantor, D. H. Pruitt, Sr., and that no part thereof passed to R. L. Pruitt, the grantee in the deed. While the term used was "reserved," instead of "excepted," it is

manifest from the provision as a whole that the minerals in the land were to be "held," and were property in esse, and not some new right, as a charge for rentals or an easement not theretofore existing.

Nor do we think the effect of the exception, as we have stated it, is limited to minerals merely "on" the surface of the land. There is no contention before us that the term "minerals" will not include the oil and gas beneath the land, and, if we are to attribute to the grantor, as we must, the purpose to reserve or except from the operation of his deed the oil and gas, it must have been in contemplation of all the parties that such minerals were to be found only beneath the surface, particularly in view of the fact that the record fails to disclose that at the time of the execution of the deed minerals of any character were located upon the surface. Nor is it material, we think, that the reservation was to D. H. Pruitt, Sr., and not to both him and his wife, for in neither event did the minerals pass to the grantee; nor is it material that there was no specific reservation of the right to enter upon the surface for the purpose of drilling and developing the land for oil and gas, these were incidental privileges essential to the existence of the right to the property, and therefore necessarily implied and agreed to by the grantee in accepting the deed with the reservations stated.

[3] At the death of D. H. Pruitt, Sr., there were six inheritable interests represented by the plaintiffs and interveners in this suit, and among them the court made disposition, of which no complaint is made, except that the court adjudged that the one-sixth interest of R. L. Pruitt and the one-sixth interest of M. V. Pruitt passed to their grantees, and accordingly adjudged these two one-sixth interests in favor of appellants Texas Pacific Coal & Oil Company and the Sun Company, and the further decree that the appellants C. B. Daniels and T. R. Coffield, who claimed the R. L. Pruitt one-sixth interest under a conveyance from him of his mineral rights, made some time after his father's death. We are of the opinion that these conclusions of the trial court were correct.

R. L. Pruitt and M. V. Pruitt by their conveyances purported to convey full fee-simple title to their vendees; those deeds being without limitation. See V. S. Tex. Civ. Stats. art. 1106. Those deeds also both contained express warranties, and we think it well settled in this state that thereby both R. L. Pruitt and M. V. Pruitt and those in privity with them by inheritance or by purchase were estopped from asserting any right to the after-acquired title from their father. We will not dwell upon this phase of the case inasmuch as it seems to be so well settled. Baldwin v. Root, 90 Tex. 546, 40 S. W. 3; Robinson v. Douthit, 64 Tex. 101; Lindsay v. Freeman, 83 Tex. 259, 18 S. W. 727; Herman on Estoppel, § 651; 2 Devlin on Deeds, § 944.

Applying the principle of these cases, the title of R. L. Pruitt and M. V. Pruitt passed immediately upon the death of their father to their grantees, and neither, therefore, could thereafter convey by deed or by inheritance any interest in the minerals. One of the appellants, with some plausibility, maintains that by the reservation in the deed of D. H. Pruitt, Sr., there were thereafter the deeds to the surface and minerals which were separate and distinct, and that therefore the doctrine of the case last cited would have no application; but we do not feel prepared to approve this distinction. It is true that it has been held that a conveyance of land with a reservation of the minerals, or a conveyance of the minerals alone, amounts to a separation of the different properties; but this is so merely as a legal fiction. There is and can be no severance in fact made by a mere conveyance.

It follows, we think, that there was no error as assigned, and that the judgment below must be in all things affirmed.