## UNITED GAS PUBLIC SERVICE CO. v. ROY et al.*
### No. 4454.

Court of Appeal of Louisiana. Second Circuit.

April 28, 1933.

Lee, Gilmer & Lee, of Shreveport, for appellant.

Wilkinson, Lewis & Wilkinson, of Shreveport, and Wallace & Hardeman, of Benton, for appellee.

*Rehearing denied June 5, 1933.

TALIAFERRO, Judge. ·

Loye McDade held fee-simple title to W. ½ of S. W. ¼, section 13, township 17 north, range 12 west, in Bossier parish, La. On July 23, 1923, he sold to H. S. Skannal one-half of all the oil, gas, and other minerals on, in, and under said tract. On December 2, 1925, McDade executed a credit deed to Claude Durham, the description of the prop-, erty therein conveyed being as follows:

"W. ½ of S. W. ¼ of Section 13, Township 17 N., Range 12, containing 80 acres, more or less;

"Reserving to this vendor an undivided one-half of all oil, gas or other mineral rights on or under the S. W. ¼ of the S. W. ¼ of said section."

It is well to state here that this suit arose from differences in interpretation of the meaning and effect of the above-quoted reservation, whether the one-half interest intended to be reserved by McDade was the same half interest he had formerly sold to Skannal, or whether he intended to reserve to himself the half interest remaining in him after the sale to Skannal.

On November 20, 1926, Claude Durham and Loye McDade gave a 3-year oil and gas lease to Skannal on the entire 80-acre tract, which provides for the customary payment to lessors of one-eighth of the market price of the gas produced from wells thereon, and carrying the further provision that, should the interest of the lessors in the subject of the lease be less than the whole thereof, then the royalties and rentals to be paid thereunder should be in the proportion which their actual interest bears to the whole and undivided fee.

Skannal also gave a lease to an oil company of the interest in the oil, gas, and mineral rights he acquired from McDade on July 23, 1923, and assigned to the same company the lease he acquired from Durham and McDade, above mentioned. All rights under the two leases were finally acquired by the plaintiff herein on September 15, 1931, and are now held by it.

On January 8, 1927, Claude Durham sold to R. O. Roy one-eighth of the "oil, gas and other minerals in and under and that may be produced from" the W. ½ of S. W. ¼, section 13, township 17 north, range 12 west, containing 80 acres, for $175 cash.

On September 28, 1927, Durham reconveyed to McDade the entire 80-acre tract with no mention of minerals.

Two producing gas wells were brought in on said tract of land, one of which is located on the S. W. ¼ of S. W. ¼ thereof, which is now owned by plaintiff.

Plaintiff alleges that one-eighth of the royalties due under said mineral leases, so far as the S. W. ¼ of S. W. ¼ is concerned, is in dispute between and being claimed by said R. O. Roy and Loye McDade; that the conflicting interest is disclosed by the public records of Bossier parish. It is further alleged that there is now in its hands $1,166.60 due to the rightful owner of the one-eighth royalty (one sixty-fourth of the whole) in dispute, and that petitioner desires to pay the same to the claimant adjudged to be entitled thereto; that other amounts will continue to accrue to such owner, as said well is now actively producing gas.

With permission of the court, the above-named amount was deposited in its registry, and Roy and McDade were interpleaded to litigate its ownership.

McDade denies that Roy has any interest in or right to said fund, and denies that the records of Bossier parish disclose a conflicting interest between him and Roy to the minerals and royalty in question; that said records disclose him to be the owner of one-half of the minerals of S. W. ¼ of S. W. ¼, section 13, township 17, range 12 west, and H. L. Skannal owner of the other half thereof. He avers that he owned the entirety of W. ½ of S. W. ¼, section 13, township 17 north, range 12 west, by fee-simple title, including the minerals, and sold one-half of the minerals, including oil and gas, to H. L. Skannal on July 23, 1923, and on December 2, 1925, he sold to Claude Durham said tract of land, but reserved to himself an undivided one-half of all the oil, gas, or other minerals in and on the S. W. ¼ of S. W. ¼ of the tract; that, after this sale to Durham, the ownership of the mineral rights in and to S. W. ¼ of S. W. ¼ of said section was vested in himself and Skannal equally; that the deed from Durham to Roy did not and could not have vested in him any interest in the mineral rights to said 40-acre tract, but could have conveyed and did only convey to him one-eighth interest in the minerals in N. W. ¼ of S. W. ¼; that Durham acknowledged and recognized that he had no interest in said S. W. ¼ of S. W. ¼ by joining respondent in the execution of the lease to Skannal, November 20, 1926, of the entire 80-acre tract.

He prays to be decreed entitled to the deposited fund, and that his ownership of the royalty, which produced said fund, be recognized, and that Roy be decreed to have no valid interest therein, and that future accruals of royalty funds be ordered paid to him.

By amended petition this defendant avers that Roy has publicly acknowledged and recognized that he had no interest whatsoever in the minerals in and under S. W. ¼ of S. W. ¼, section 13, as shown by another deed to him from Durham, on January 25, 1927, duly recorded, wherein and whereby Roy acquired one-eighth of the minerals in and under the N. W. ¼ of S. W. ¼ of said section 13, in addition to the one-eighth interest therein previously conveyed to him by Durham; that this deed of the additional one-eighth

interest in minerals under N. W. ¼ of S. W. ¼, section 13, was executed for the purpose of replacing the one-eighth interest in the S. W. ¼ of S. W. ¼ of section 13 which said Durham had attempted to sell to said Roy; that Roy accepted same for that purpose and for the same consideration paid in the original deed to him by Durham, no additional consideration being paid therefor.

Defendant Roy contends that he is owner of one-eighth of the minerals, including oil and gas, lying in and under S. W. ¼ of S. W. ¼, section 13, township 17 north, range 12 west, in contest herein, and as such entitled to one sixty-fourth of all the gas withdrawn from the well thereon, and that his ownership of said minerals and royalty interest is based upon the following chain of title:

(1) Sale to him from Claude Durham, hereinabove referred to, conveying one-eighth of the minerals in and to W. ½ of S. W. ¼, section 13, township 17 north, range 12 west.

(2) Sale from Loye McDade to Claude Durham, above mentioned, wherein W. ½ of S. W. ¼ of said section was conveyed, reserving to the vendor one-half interest of all oil, gas, and other minerals, on and under the S. W. ¼ of S. W. ¼ thereof.

(3) Sale from Loye McDade to H. L. Skannal, referred to above, of one-half of all his entire interest in and to the oil, gas, etc., on and under the W. ½ of S. W. ¼ of said section 13.

(4) That said McDade had valid title to said 80-acre tract prior to January 1, 1923, by mesne conveyances out of the United States government.

He averred that the sales above mentioned vested ownership of the mineral rights on, in, and under S. W. ¼ of S. W. ¼ of said section 13 in the following proportions in the following persons: H. L. Skannal, one-half interest; Claude Durham, three-eighths interest; R. O. Roy, one-eighth interest.

He further averred that on September 28, 1927, by duly recorded deed, said Durham sold and conveyed to Loye McDade the W. ½ of S. W. ¼, section 13, township 17 north, range 12 west, and that, resulting therefrom, the ownership of the mineral rights, including oil and gas, under S. W. ¼ of S. W. ¼, section 13, was vested, and has so remained, in the following persons: H. L. Skannal, one-half interest; R. O. Roy, one-eighth interest; Loye McDade, three-eighths interest.

He alleged that plaintiff has refused to pay him the one sixty-fourth of the gas produced from the well on said land, and denied that the records of Bossier parish disclose an interest conflicting with his ownership of the mineral rights and royalty interest in question herein, but, on the contrary, said records disclose him to be the sole owner thereof.

He prays that he be decreed to be the owner of one-eighth interest in the minerals in and under S. W. ¼ of S. W. ¼, section 13, township 17 north, range 12 west, and as such entitled to be paid a royalty of one sixty-fourth of all gas produced from said well and used off the premises; that plaintiff account to him at the customary prices prevailing at time said gas is produced and used for one sixty-fourth of same; that, if the $1,166.60 deposited by plaintiff herein represents the amount due for said one sixty-fourth of the gas produced and used from said well, then that he be decreed entitled to be paid the same and judgment be rendered accordingly. He did not specifically answer the issue raised by McDade's amended answer, but objected to admissibility of all evidence offered in support of it.

This defendant also filed a plea of estoppel against McDade's right to assert title to or ownership of the mineral rights involved herein. This plea is predicated upon deductions drawn from the contents and stipulations of the recorded instruments described in his (Roy's) answer. These may be summarized as follows: That, as he acquired the one-eighth interest in the minerals in dispute from Claude Durham by warranty deed, and that as said Durham acquired said 40-acre tract (S. W. ¼ of S. W. ¼) and half interest in the minerals thereunder from Loye McDade, under full warranty and guaranty of title, and that as said McDade conveyed to said Durham said S. W. ¼ of S. W. ¼, section 13, township 17 north, range 12 west, with one-half of the minerals thereunder, including oil and gas, he is now estopped to deny that said Durham did acquire in accordance with the provisions of said deed, title to one-half interest in the minerals underlying said 40-acre tract, and is likewise estopped from asserting that said Durham was not the owner of half interest in said minerals at the time he conveyed to defendant an undivided one-eighth therein.

The plea of estoppel was overruled by the lower court, and judgment rendered in favor of McDade, as prayed for. Defendant Roy has appealed.

██ The issue raised by the plea of estoppel is in reality presented in a different form by the answers of the contending defendants. The position of Roy is that the half interest in minerals under S. W. ¼ of S. W. ¼ of section 13, reserved by McDade in his deed to Durham, was the same half he had previously conveyed to Skannal, and that thereafter McDade could not be heard, as against those privy to that instrument and their assignees, to assert an interest in the minerals not so reserved, he having warranted the title thereto. This position is eminently correct, if the premise be well founded. Ordinarily, no one can successfully contradict or traverse the terms of his solemn

written acts and obligations, and especially is this true where real estate or real rights are involved and third persons have acted upon the faith of such instruments when registered. After all, the question recurs to the issue raised by the pleadings, Who has the superior title to the minerals and royalty interest in question?

It will be noted that several weeks before the conveyance to Roy by Durham the latter joined McDade in the 3-year lease of the 80-acre tract to Skannal. This lease was registered 23 days before the sale to Roy. Each grantor thereby recognized in the other a vested interest in the minerals, or some portion thereof, the subject of the lease, and, if their former contract affecting these minerals required interpretation in order to determine whether either or both retained an interest therein, then, certainly, they, the grantors in the lease, have, by their own act and conduct, given us such interpretation. This was done at a time not suspicious and before any adverse interest or claim had been injected into the situation, and the public records so disclosed. It is not questioned that at the date of this lease the minerals in and under the N. W. ¼ of S. W. ¼ of said section 13 were owned by Skannal and Durham, in equal proportions. Therefore the intervention of McDade in the lease could have been for no other purpose than to give to Skannal the control of all the minerals in the S. W. ¼ of S. W. ¼ of the tract, as he, at the time, owned one-half of same, by virtue of the sale to him by McDade previously. If Durham then thought he owned one-half of the minerals under the S. W. ¼ of S. W. ¼ of section 13, why did he join with McDade in the lease to Skannal? Why would he voluntarily recognize in another a property right, so material to his own interest, if he did not feel and know such right existed?

In view of these facts, and these actions of the lessors, the reservation in the sale from McDade to Durham is clarified and rendered unambiguous, if such were necessary to correctly understand the intention of the parties. In this sale, the reservation was "to this vendor," and it is significant that it was restricted to only one 40 of the 80-acre tract. Had McDade intended to withhold from the sale the mineral rights previously conveyed by him to Skannal, he certainly would have caused the reservation to embrace both 40's. Evidently it was his intention, and that of Durham, to share to some extent, by equal units, the mineral rights of the 80-acre tract, not owned by Skannal.

■ The intention of those signing contracts as principals must, in the absence of fraud, error, etc., be sought from the contents of their contracts, in conjunction with other writings by them involving or referring to the same subject-matter, coupled with their own acts reflecting their own understanding of the meaning of the terms and stipulations thereof. If this intention can be arrived at from a construction of one, or more than one, instrument of record, then the public is impressed with the full extent of such intention and must be governed accordingly, especially when real rights or real property are involved.

Article 1956 of the Revised Civil Code: "*Construction by parties—Effect.*—When the intent of the parties is doubtful, the construction put upon it, by the manner in which it has been executed by both, or by one with the express or implied assent of the other, furnishes a rule for its interpretation."

"Conveyance records are only things to which one dealing with real estate or any real right ever need look." Loranger v. Citizens' Bank, 162 La. 1054, 111 So. 418.

■ Under article 2266 of the Revised Civil Code, sales, contracts, etc., affecting immovable property, are without effect, except as between the parties, until recorded. Of course, after being recorded, all persons have constructive notice of their existence and contents.

When Roy purchased from Durham one-eighth of the minerals in the W. ½ of S. W. ¼, section 13, he had notice, constructively, if not actually, that McDade had reserved from his sale to Durham one-half of the minerals in and under the S. W. ¼ of S. W. ¼ of section 13, and he likewise had notice that Durham had recognized that McDade did have an interest in these minerals because of their joint lease previously to Skannal.

■ The word "reservation," as employed in sales of land, wherefrom the whole or an interest in minerals is withheld, or title thereto is not intended to pass, has a distinct meaning, and, while often used interchangeably with the word "exception," in reality and technically, differs widely in legal effect from it. A reservation, strictly speaking, is a clause in a deed creating or reserving something out of the thing granted that was not in existence before, while an "exception" is something existing before as a part of the thing granted, and which is excepted from the operation of the conveyance. Donnell v. Otts (Tex. Civ. App.) 230 S. W. 864; Stanton v. Herbert & Sons, 141 Tenn. 440, 211 S. W. 353; 8 Ruling Case Law, § 146, par. 1088.

To express it differently, a "reservation" in a deed creates a new condition, arising from the taking back of something out of that which is granted, and an "exception" is of some part of the estate not granted at all. The former relates to a new thing or condition created, which had not previously existed independent of the fee, while the latter in effect relates to and recognizes previously

existing conditions qualifying or limiting the title of the grantor in the thing.

Thornton's Law of Oil and Gas (4th Ed.) vol. 2, p. 1603, § 854 (e), clearly draws a distinction between exceptions and reservations in deeds conveying surface rights. He says: "An exception in a deed is something existing before as a part of the thing granted and which is excepted from the operation of the conveyance; but a reservation is something created out of the granted premises that was not in existence before."

Our Supreme Court, in Nabors Oil & Gas Company v. Louisiana Oil Ref. Co., 151 La. 362, 91 So. 765, 777, considered the effect of a second reservation of oil and gas rights by one who originally held fee-simple title to a tract of land. In that case, Sample, the owner of the land, on February 15, 1904, sold all the minerals thereunder to Louisiana Coal & Lumber Company, which were afterwards acquired by the plaintiff, and on April 15, 1905, he sold the land to one Moseley, in which sale the following reservation was incorporated: " 'Saving and excepting and reserving unto the said vendor, his heirs and assigns, all oil and gas and other valuable minerals that may be under the surface of said land,' etc."

The court, commenting on this clause in the deed, said:

"The language of the reservation, in favor of the seller of the land, and his heirs and assigns, is too plain to admit of the construction that it was intended to inure to the benefit of plaintiff's author in title, to whom the mineral rights had already been sold. Even though it might have been so intended by S. G. Sample, it was not so acknowledged or recognized by Hill Moseley. * * *

"Of course, the reservation made by S. G. Sample, in his sale of the land to Hill Moseley, could not have prejudiced the mineral rights which plaintiff's author in title had already acquired from Sample. If those rights had been exercised within ten years from the date when they were acquired by plaintiff's author in title from S. G. Sample, the reservation which he afterwards made, in his sale of the land to Hill Moseley, would not have availed him. But the reservation made by Sample in his sale to Moseley did not prolong the period of prescription which was running against the rights which Sample had already conveyed to plaintiff's author in title. When those rights were lost by prescription, the reservation which Sample had made in his own favor, and in favor of his heirs and assigns, was yet in effect."

The court held, and the holding has application to the case at bar, that the "reservation" in the deed from Sample to Moseley, above quoted, did not inure to the benefit of the mineral sale by Sample to the coal company, and therefore did not interrupt the current of prescription liberandi causa applicable to that contract.

In view of the authorities cited and of the expressions of the court in the Nabors Oil & Gas Company Case, above referred to and quoted from, it seems clear to us, without any strained interpretation, that the reservation in the deed from McDade to Durham did not inure or relate to the pre-existing mineral rights owned by Skannal, but in reality created a new condition, thing, or right, independent of the sale of the land, which had not previously existed apart and independent of the land itself.

We find it unnecessary to pass upon the other question discussed by both sides, viz. the admissibility of the evidence tendered to prove that Roy had accepted from Durham a transfer of one-eighth interest in the minerals in the N. W. ¼ of S. W. ¼, section 13, in lieu and settlement of a like interest in the S. W. ¼ of S. W. ¼, section 13, good title to which, it is contended, he failed to acquire from Durham.

The judgment appealed from is correct, and is hereby affirmed.