477 P.2d 771

Ronald **WILTBANK**, Appellant,

v.

**LYMAN WATER COMPANY**, Appellee.

No. 1 CA–CIV 1240.

Court of Appeals of Arizona,
Division 1,
Department A.

Dec. 10, 1970.

Rehearing Denied Jan. 12, 1971.

Review Granted Feb. 16, 1971.

Blake, Colter & Flickinger, by James H. Colter, Phoenix, for appellant.

Earl Platt, St. Johns, for appellee.

FREY, Judge of the Superior Court.

The appellant-plaintiff in this case Ronald Wiltbank brought an action in trespass for flooding of his lands caused by the appellee-defendant Lyman Water Company backing up water by means of their dam. Plaintiff sought an injunction to restrain the defendant water company from any further flooding of plaintiff's land and asks damages for ruin done to the land. After a successful motion for change of venue from Apache County, trial was held in Navajo County on the issues of the case. Plaintiff rested and moved for a directed verdict which was denied. Defendant moved for a directed verdict which was granted.

Plaintiff brings this appeal from an order denying a new trial. The appellee asserts in his brief that the appeal is not timely. The denial of a motion for new trial is an appealable order. A.R.S. § 12–2101, subsec. F, par. 1. On June 10, 1969, the trial court entered a minute entry order denying the motion for new trial. On that date the order was not in appealable form. Rules 54(a) and 58(a), Rules of Civil Procedure, 16 A.R.S. The formal written order denying the motion for new trial was signed on July 23, 1969, and it was filed two days later. The order denying the motion for new trial was then in appealable form. The notice of appeal was filed September 8, 1969. We hold that the appeal was timely.

To be determined is whether as a matter of law under the undisputed facts of the case, the directed verdict was properly granted. Before going into the legal issues of the case, a brief summary of the pertinent facts should be stated.

The defendant's predecessors obtained a so called easement or right-of-way for a reservoir and water system upon public lands by filing a right-of-way map and an application with the Department of Interior in 1914. This was approved in the same year pursuant to provisions of the Act of March 3, 1891 (26 Stat. 1095) and Sec. 2 of the Act, May 11, 1898 (30 Stat. 404). In 1915 the newly constructed dam, seventy feet high, was washed away before proof of construction was accepted by the Department of the Interior. Reconstruction of the dam took several years and proof of construction was filed with and accepted by the Department of the Interior on May 20, 1923. The second dam was only sixty feet high, but the spillways remained at the same level as they were originally constructed, thus the dam would create a reservoir of 1535 acres in area and would hold 35,690 acre-feet of water as allowed by the so called reservoir right-of-way. In 1924 plaintiff's predecessor, Jesus Moreno, began to homestead the subject property and in 1928, he acquired a patent to the land allegedly damaged by floodings. The Deed to said land contained following language:

"NOW KNOW YE, that this is, therefore, granted by the UNITED STATES unto the claimant the tract of land above described; TO HAVE AND TO HOLD the said tract of land, with the appurte-

nances thereof, unto the said claimant and to the heirs and assigns of the said claimant forever; subject to any vested and accrued water rights for mining, agricultural, manufacturing, or other purposes, and rights to ditches and reservoirs used in connection with such water rights, as may be recognized and acknowledged by the local customs, laws and decisions of courts; and there is reserved from the lands hereby granted a right of way thereon for ditches or canals constructed by the authority of the United States."

In 1931 at the request of the Arizona State Engineer the spillway was lowered eight feet and widened. This lowering of the spillway reduced the reservoir capacity to 21,000 acre-feet. In 1948 and 1949 the dam was raised ten feet and the spillway was raised 6.8 feet; this allowed about 30,000 acre-feet to be stored. If the spillway were to be raised another 1.2 feet an additional 6,000 acre-feet could be stored in keeping with the so called easement.

The defendant's position is that he holds a written "easement" to flood the subject land (over 29 acres). Defendant also claims that as to any land not covered by the easement but which is flooded, he has a prescriptive right going back for more than 10 years.

The appellant in this case asks the court to determine the nature of appellee's easement on or claim to the appellant's land; to determine whether as a matter of law forfeiture or abandonment of rights is a jury question, whether there were issues to be decided from the evidence and to determine as a matter of law whether there was loss of water rights and whether the easement in question may be perpetuated by illegal means.

The court can best resolve these issues by determining what rights plaintiff Wiltbank has in or to the subject land and whether as a matter of law there was an abandonment or forfeiture of the easement.

The questions presented involve United States conveyances, and land transactions and therefore the issues are Federal in scope and we should look to decisions interpreting the applicable Federal laws and principles.

■ In determining whether there is right to inundate appellant's land under the "easement" the court must determine its nature. The defendant water company does not have an easement as the term is commonly understood; it has a limited fee which is a creation of the Congress of the United States. The limited fee has several definite characteristics. It is a right to use the surface of the land for a specific purpose. Such land has definite boundaries which must be recorded with the Federal Government. The limited fee cannot be conveyed to be used for any purpose other than that specified in the grant and cannot be taken by adverse possession for any other purpose. If the limited fee is abandoned or forfeited it can only be by virtue of Federal statute or regulation and the fee reverts back to the United States. The limited fee owner has a superior right to the surface of the land against anyone else. The limited fee is used for railroads, pipelines, power plants, irrigation ditches and reservoirs, canals, etc.; for authority as to the foregoing conclusions, see 43 U. S.C.A. Sections 881 through 971, chapters 21 & 22.

The concept of a limited fee such as was recognized when the U. S. Supreme Court stated in regard to a railway right-of-way: "But, if it may not be insisted that the fee was granted, surely more than an ordinary easement was granted,—one having the attributes of the fee, perpetuity and exclusive use and possession; also the remedies of the fee, and, like it, corporeal, not incorporeal, property." New Mexico v. United States Trust Co., (1898) 172 U.S. 171, 19 S.Ct. 128 at 133, 43 L.Ed. 407. The court in the *New Mexico* case, supra, goes on to point out that the mere fact the railroad does not use all its right-of-way or even a great part of it, does not amount to abandonment so long as part of it is used. This result comes about because the rail-

road has superior possession to the surface of the limited fee in a permanent manner. The subservient owner has no right to the surface but may have a right to the minerals underground so long as it does not interfere with the limited fee holder.

In the case at bar the appellee water company is entitled to have free unobstructed use of the subject land when it needs it for its proper use just as the railroad is entitled to have its right-of-way clear when it needs it. New Mexico v. United States Trust Co., cited above. Since the water company did not need plaintiff's land, the plaintiff was entitled to use it for a purpose not inconsistent with Lyman Water Company's superior right. Anything placed on the subject property is placed there at the owner's peril subject to the limited fee; i.e., Moreno's house.

The United States Supreme Court has further stated that a railroad has a limited fee in effect so long as it uses the fee for the purpose intended. The railroad cannot alienate its limited fee in direct conflict with the purpose for which the fee was granted, and adverse possession cannot be used to acquire part of the right-of-way in direct conflict with congressional mandate. To allow adverse possession to apply would allow by indirection that which can't be done directly (sale of the right-of-way for other than railway purposes). Northern Pacific Railway Company v. Townsend, (1908) 190 U.S. 267, 23 S.Ct. 671, 47 L.Ed. 1044. New Mexico v. United States Trust Co., (1898) 172 U.S. 171, 19 S.Ct. 128, 43 L.Ed. 407.

In the case of United States v. Michigan, (1904) 190 U.S. 379, 23 S.Ct. 742, 47 L.Ed. 1103, the State of Michigan built a canal for shipping and acquired a limited fee from the United States for that purpose only. The State acquired 750,000 acres of land to sell to pay for construction of the canal. The State used the surplus money for other purposes and the Supreme Court stated that the land was granted for a specific purpose. The Court analogized it to a trust. The Court said that if the money was put to any other purpose the lands would revert. In the above case the court, construing an 1852 Act, states:

"The act does not grant an absolute estate in fee simple in the land covered by this right of way. It was in effect a grant upon condition for a special purpose; that is, in trust for use for the purposes of a canal, and for no other. The state had no power to alien it and none to put it to any other use or purpose. Such a grant creates a trust, at least by implication." United States v. Michigan, 190 U.S. 379 at 398, 23 S.Ct. 742 at 748.

The Court then goes on to liken this trust to a fee limited as stated in Northern P. R. Co. v. Townsend, cited supra.

In 1915 the Supreme Court citing many of the above cited cases stated:

"The right of way granted by this and similar acts is neither a mere easement, not a fee simple absolute, but a limited fee, made on an implied condition of reverter in the event that the company ceases to use or retain the land for the purposes for which it is granted, and carries with it the incidents and remedies usually attending the fee." Rio Grande Western Ry. v. Stringham (1915) 239 U.S. 44, 47, 36 S.Ct. 5 at 6, 60 L.Ed. 136.

In 1921 the Supreme Court of the United States cited the above language as applying to canals, ditches and reservoirs. Kern River Co. v. United States (1921) 257 U.S. 147 at 152, 42 S.Ct. 60 at 62, 66 L.Ed. 175.

The water rights involved in this case are not separate and distinct from the reservoir rights but are in fact part of the limited fee. The United States Government when it granted the reservoir rights which are part of the limited fee, granted the fee holder rights to enough water to fill the reservoir to its maximum height and to keep it filled if possible. Other people with prior water rights of course can enforce them against the defendant. What the Department of the Interior did

in this case was to grant Lyman Water Company's predecessor water rights enough to use the fee. There is direct evidence of this in Jesus Moreno patent deed or document which states that Moreno takes the land " * * * subject to any vested and accrued water rights for * * * agricultural * * * or other purposes and rights to ditches, and reservoirs used in connection with such water rights, as may be recognized and acknowledged by the local custom, laws and decisions of courts; * * *"

This exception in the patent document clearly shows that the water rights and the reservoir were granted together in limited fee. To hold otherwise would bring about an absurd result, assuming the reservoir limited fee reverted back to the Federal Government. The limited fee would return to the government only in part since it would only get the right to the reservoir back, but no means to use it and the plaintiff could defeat Congress and the Department of the Interior by claiming the water rights were abandoned. In short the Federal Government would be denied its reverter of the whole thing it conveyed. The Department of the Interior conveyed the water rights as part of the limited fee subject to the customs, laws and decisions of courts at the time of vesting, and law later developed would have no effect upon the property rights of the limited fee so to defeat the purposes of Congress under the 1891 Act.

■ In construing the rights of the plaintiff Ronald Wiltbank to the subject property, his rights can be no better than the original homesteader, Jesus Moreno. As we have previously pointed out, Moreno took the property " * * * subject to any *vested and accrued water rights,* for mining, agricultural, manufacturing, or other purposes, and rights to ditches and *reservoirs* used in connection with such water rights as may be *recognized* and *acknowledged* by the local customs, laws and decisions of courts; and there is reserved from the lands hereby granted a right-of-

way thereon for ditches or canals constructed by the authority of the United States." (emphasis supplied)

We hold, therefore, that the reservoir and necessary water rights, making up the limited fee, granted to the reservoir owner and successors, were never conveyed to Jesus Moreno nor in any way limited by the grant to Moreno because they were excepted from the patent document. In addition there was a reservation of ditches and canals and inferentially reservoirs, United States v. Big Horn Land and Cattle Co. (8 Cir., 1927) 17 F.2d 357, to be built under the authority of the United States. This language in fact and at law precludes the plaintiff Wiltbank from claiming the surface of his land as against the defendant herein.

"A reservation, strictly speaking, is a clause in a deed creating or reserving something out of the thing granted that was not in existence before, while an exception is something existing before as a part of the thing granted, and which is excepted from the operation of the conveyance. Donnell v. Otts (Tex.Civ.App.) 230 S.W. 864; Stanton v. [T.L.] Herbert & Sons, 141 Tenn. 440, 211 S.W. 353; 8 Ruling Case Law, § 146 par. 1088.

To express it differently, a 'reservation' in a deed creates a new condition, arising from the taking back of something out of that which is granted, and an 'exception' is of some part of the estate not granted at all. The former relates to a new thing or condition created, which had not previously existed independent of the fee, while the latter in effect relates to and recognizes previously existing conditions qualifying or limiting the title of the grantor in the thing." Elkins v. Townsend (D.C.1960) 182 F.Supp. 861 at 872, citing United Gas Public Service Co. v. Roy, La.App.1933, 147 So. 705, 706. The Elkins case presents a comprehensive discussion of the problem.

Obviously the Lyman Lake limited fee was excepted from the Patent, since the government recognizing it had no rights in contravention of this limited fee, could not convey what it did not have. But the United States further reserved future limited fees to the plaintiff's entire land so that it may be inundated with water if the need be.

The problem with the appellant's theory of his case is that it has no foundation in Federal law and is in conflict with cited cases of the Supreme Court of the United States.

■ We hold further than any forfeiture or abandonment is strictly an issue between the defendant Lyman Water Company as limited fee holder and the United States as grantor with reverter rights. If the United States has a right to enforce its reverter and does not do so, a volunteer has no right in equity to enforce it. Mr. Wiltbank is a volunteer as far as the legal relationship between the Government and the limited fee holder is concerned.

It has been held that a failure to construct a required ditch, canal or reservoir within the legal time period does not *ipso facto* divest the limited fee holder of the fee and if there is to be forfeiture under an act of Congress, the forfeiture must be enforced in a judicial proceeding or by the provisions of an act of Congress. United States v. Whitney, (C.C., 1910) 176 F. 593, Carns v. Idaho-Iowa Lateral & Reservoir Co. (1921) 34 Idaho 330, 202 P. 1071. The Attorney General of the United States has the authority to enforce the reverter rights through forfeiture for non-use of the limited fee. Kern River Co. v. United States (1921) 257 U.S. 147, 42 S.Ct. 60, 66 L.Ed. 175; 43 U.S.C.A. 948.

Under present day law no right-of-way is cancelled unless there is a specific administrative order to cancel, 43 C.F.R. Section 2234.1–5. But the right of reverter under this section is still vested in the United States.

■ The appellant makes much of 43 C.F.R. 2234.1–4(b) (2) *"Non construction,* *abandonment or nonuse.* Unless otherwise provided by law, rights-of-way are subject to cancellation by the authorized officer for failure to construct within the period allowed and for abandonment on non-use."

The point, the appellant misses is that the section applies to rights-of-ways acquired under these regulations promulgated during the 1960's and cannot be applied retroactively back to 1920. Further the phrase, "Unless otherwise provided by law * * *" protects the regulation against conflicts with acts of Congress and Supreme Court decisions.

■ The appellant urges that he would proceed with the forfeiture but as pointed out before he has no standing concerning the limited fee which is conclusively binding on the United States by its approval of proof of construction and its acceptance by the Department of the Interior.

The following quotation from Uhrig v. Crane Creek Irr. Dist. (1927) 44 Idaho 779, 260 P. 428, states a concise answer to the appellant's objections to the appellee's rights in Lyman Lake:

"Appellant contends that the right conferred by the foregoing statute is one in presenti, subject to forfeiture for failure to complete the work within five years after location of the reservoir but to be effectual the default must be followed by a declaration of forfeiture which can only be made by an act of Congress or in an appropriate judicial proceeding. Carns v. Idaho-Iowa Lateral & Reservoir Co., 34 Idaho 330, 202 P. 1071; United States v. Whitney (C C) 176 F. 593.

"The grant vested in defendants' predecessors the right of way for the reservoir, subject to the right of forfeiture for failure to complete the work within five years, and, although the work was not completed until long after the five years had passed (in fact, the five years had passed before plaintiff made his homestead filing), yet, no action having ever been taken to declare the forfeiture, their rights were never lost. The reser-

voir was approved March 8, 1923, and such approval, not attacked for fraud or imposition, is conclusive as against appellant. Hurst v. Idaho-Iowa Lateral & Reservoir Co., 42 Idaho 436, 246 P. 23. When the plaintiff received his patent he received no paramount right as against the defendants' claim; the "land in question was conveyed to him subject to vested and accrued water rights and rights of way for ditches and reservoirs."

"The act of granting the right of way for ditches and reservoirs contains many provisions that are analogous to those found in the Act of March 3, 1875, which is the act granting rights of way to railroads, and in construing the act of 1875 it has been uniformly held that the grant of the right of way for a railroad through public lands is made upon the implied condition that the right of way be used for railroad purposes only, and the right of the company are limited to such uses, and the purpose cannot be defeated by voluntary alienation of title or by abandoning the possession to an adverse claimant. Northern Pac. R. Co. v. Townsend, 190 U.S. 267, 23 S.Ct. 671, 47 L.Ed. 1044; H. A. & L. D. Holland Co. v. N. P. R. Co. (C.C.A.9) 214 F. 920."

In the present case the defendant's position is even stronger, since the plaintiff's predecessor started homesteading after the Secretary of the Interior accepted the certificate of construction of the dam which would retain the amount of water called for by the limited fee.

■ The appellant Wiltbank, makes much of the lowering of the spillway in 1931 and that the present spillway though higher than in 1931 is lower than the maximum limits called for in the fee. It must be remembered that the 1535 acre reservoir is not broken into units as far as Lyman Water Co., is concerned. It has one limited fee for the whole 1535 acres. Fences cannot affect defendant's rights, since the fee has the priority use of the surface. Obviously a reservoir is not going to be up to full capacity at all times since its purpose is to store water in times of great rainfall to be used later.

The defendant water company did not abandon the limited fee on the subject property either because of lowered spillway or reduced rainfall. The defendant having one limited fee over all the 1535 acres, use of part of the area protects the right to use the other parts of the fee when he uses part of it continuously. New Mexico v. United States Trust Co., 172 U.S. 171, 19 S.Ct. 128, 43 L.Ed. 407.

■ Appellant's argument that the "easement" was abandoned or forfeited to him as it concerns his property has no basis in law, because his use would be in direct conflict with the idea that the limited fee cannot be alienated for a different purpose or taken by adverse possession.

■ The appellant further argues that in 1949 the appellee water company raised the spillways illegally and therefore cannot claim the additional water level. The whole area in the limited fee is presumed necessary for the purpose for which use of the land was granted. Northern Pacific R. Co. v. Townsend, supra. We have stated that there is one limited fee of 1535 acres and that the fee holder need not use the whole thing at one time, but may from time to time use more or less of the area, therefore the illegality, if any, regarding the manner of construction of the dam or spillways has no effect one way or the other on the right to use the 1535 acre reservoir. New Mexico v. United States Trust Co., 172 U.S. 171, 19 S.Ct. 128, 43 L.Ed. 407. The State cannot take away the limited fee from the fee holder and thereby wipe out the Federal Government's reverter, since the limited fee is a creation of Congress. Kern River Co. v. United States, (1921) 257 U.S. 147, 42 S.Ct. 60, 66 L.Ed. 175.

The plaintiff cites Gila Water Co. v. Green, 29 Ariz. 304, 241 P. 307 (1925) as some authority that there can be a forfeiture to a land patent holder and he infers

that this case infers that the government need not be a party. A close reading of the briefs, abstract of record and transcript in the *Green* case all indicate several material differences in the fact situation as compared to the present case. But, since the Supreme Court of Arizona had to determine the case on the facts in that case and the law presented, except from Whitney v. United States, no other case cited herein and decided before 1925 was cited to the Arizona Supreme Court in the *Green* case. Had either party cited these cases the decision would probably have been different.

The appellant cites Hurst v. Idaho-Iowa Lateral and Reservoir Co., (1921) 34 Idaho 342, 202 P. 1068 to support his position on reversion and forfeiture. However, in a later case involving the same parties and fact situation, the Idaho Supreme Court held that the patent owner could not seek a forfeiture except for fraud or imposition, once the Secretary of the Interior accepts the application and map subject to the condition subsequent. Hurst v. Idaho-Iowa Lateral Reservoir Co., (1926) 42 Idaho 436, 246 P. 23. Therefore it follows that once the construction is accepted the patentee would be further barred from raising an issue of forfeiture.

Since the Federal Courts will not grant a forfeiture except by provision of Congress and forfeitures are not favored when against public interest, and there being no reason for forfeiture in this present case, this issue of the plaintiff has, as a matter of law, no basis in this case.

Further, the only forfeitures which seem to have been sought in the Federal Courts are for noncompletion of construction or no construction ever started on reservoir sites. Kern River Co. v. United States, cited supra. United States v. Beaver Irr. Land & Power Co. (8 Cir., 1927) 21 F.2d 1001. Union Land & Stock Co. v. United States (9 Cir., 1919) 257 F. 635; United States v. Big Horn Land & Cattle Co. (8 Cir., 1927) 17 F.2d 357. Based on the discussion above and the fact that holdings of the United States Supreme Court and inferior Federal Courts are binding on this court, and since the present case concerns federally granted rights in land, creations of Congress, this court holds that the trial judge was correct in granting the defendant a directed verdict at the close of the plaintiff's case.

The Judgment is affirmed.

DONOFRIO, P. J., and STEVENS, J., concur.

NOTE: The Honorable JAMES DUKE CAMERON having requested that he be relieved from the consideration of this appeal, the Honorable WILLIAM C. FREY, Judge of the Superior Court, was called to sit in his stead.