No. 84-118

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

E. E. EGGEBRECHT, INC.,
a Montana corp.,

Plaintiff and Respondent,

-vs-

OTIS S. WATERS, et al.,

Defendants and Appellants.

APPEAL FROM: District Court of the Seventh Judicial District,
In and for the County of McCone,
The Honorable LeRoy McKinnon, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Baxter Larson argued, Wolf Point, Montana

For Respondent:

Garden, McCann & Schuster; Gerard M. Schuster argued,
Wolf Point, Montana

Submitted: March 13, 1985

Decided: August 8, 1985

Filed: AUG 8 1985

*Ethel M. Harrison*
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a judgment of the District Court, Seventh Judicial District, McCone County, quieting title to a parcel of land owned by E. E. Eggebrecht, Inc. ("Eggebrecht"), plaintiff and respondent, and defeating a right of way for a reservoir site on that land held by Otis S. and Ardis Waters and Waters, Inc. ("Waters"), defendants and appellants. The land in question is situated in NE¼, S½, Section 12, T. 24 N., Rge. 49 E., M.P.M., McCone County, Montana.

Eggebrecht bought this land in 1973 under a contract for deed. Waters own an adjacent parcel of land. In 1976, Waters rebuilt a dam on Wolf Creek, a small stream that bisects the two properties. The dam is located about two-thirds of a mile to the east of the boundary with Eggebrecht's land. The water backed by this dam is known as the Wolf Creek reservoir. On several occasions since 1978 the water in the reservoir has covered a portion of Eggebrecht's farmland. Since the amount of water in the reservoir depends on both the extent of spring runoff and the amount of irrigation required on Waters' land, the number of Eggebrecht's acres flooded, as well as the length of time the water has stood on those acres, has varied from one year to the next. From 1978, the first year that water was backed onto Eggebrecht's land, to 1983, the year this lawsuit was filed, the maximum amount of Eggebrecht's farmland affected in any one year was twenty-five acres. Moreover, in no year was this land rendered completely unproductive. Eggebrecht was able to seed the affected acreage after the water receded, gathering, to be sure, considerably lower yields. In

addition to causing decreased productivity on some of Eggebrecht's farmland, the water has at various times caused Eggebrecht great inconvenience in moving machinery to a particular field; he has at those times been forced to make either an eight mile detour or pass through a neighbor's cultivated field.

The reservoir right of way that is the focus of this lawsuit was acquired by Waters' predecessor in interest pursuant to sections 18-21 of a March 3, 1891, Act of Congress entitled, "An act to repeal timber culture laws and for other purposes." 43 U.S.C., §§ 946-949 (1982). Under this Act, canal companies and irrigation districts, formed for the purpose of irrigation and drainage, and having filed the necessary materials for the approval of the Secretary of the Interior, were granted a right of way on the public lands for the ground occupied by any ditch, canal, or reservoir they constructed. A map of the land so occupied was to be filed in the local land office and thereafter all lands burdened by such a right of way were to pass subject to the right of way. In this case the validity of the right of way acquired by Waters' predecessor in interest is not questioned by Eggebrecht and is not at issue. A copy of a map of the reservoir filed as an application under the Act, along with a copy of a letter from the Interior Department indicating that the reservoir had been constructed and the "easement" earned, was accepted by the District Court as evidence that the right of way had properly vested. We find no reason to hold otherwise.

Upon initial review this case appeared straightforward. Waters and Eggebrecht agreed that the right of way for the reservoir site should properly be designated an easement by

3

grant from the United States to Waters' predecessor in interest. They further agreed that the reservoir site had been used as a reservoir from 1910 (the year the first dam was built) to 1938 (the year the last dam washed out), but that from 1938 to 1976 there was no dam and thus, obviously, no reservoir. At oral argument it was conceded that the issue presented was whether an easement by grant can be abandoned by non-user.

We have discovered, however, in the course of our review of this case that there is a great deal of confusion over the nature of the reservoir right of way that was granted to Waters' predecessor in interest under the March 3, 1891, Act in question. In Kern River Co. v. United States (1921), 257 U.S. 147, 152, 42 S.Ct. 60, 62, 66 L.Ed. 175, 178, the Court stated, "The right of way intended by the Act was neither a mere easement nor a fee simple absolute, but a limited fee on an implied condition of reverter in the event the grantee ceased to use or retain the land for the purpose indicated in the act." Unfortunately, this obscured both the nature of the present interest held by the grantee and the future interest held by the grantor.

With respect to the future interest, the use of the term "reverter" is clearly in error. Several cases have held that divestiture under the Act does not occur automatically upon failure to use or retain the land for the purpose stated in the Act, but must be determined by a legal proceeding. Hurst et al. v. Idaho-Iowa Lateral and Reservoir Co. (Idaho 1926), 246 P. 23; Hurst et al. v. Idaho-Iowa Lateral and Reservoir Co. (Idaho 1921), 202 P. 1068; Carns v. Idaho-Iowa Lateral and Reservoir Co. (Idaho 1921), 202 P. 1071; United States v. Whitney (1910), 176 F. 593. The Idaho Court in

Hurst (1921) compounded the terminological error in Kern River by characterizing the future interest retained by the United States as a possibility of reverter. However, a basic element of a possibility of reverter is that possession reverts automatically upon the occurrence of an event named in the granting instrument (in this case the Act of Congress). American Law of Property, Vol. I, § 4.12; Boyer, Survey of the Law of Property, 3d.ed., p. 105. Since it has been held, even in the Hurst case, that there is no automatic reversion under the Act in question, it is clear that the United States did not retain a possibility of reverter. Rather, the United States granted to Waters' predecessor in interest a right of way in the reservoir site subject to the condition that it be used for the purpose indicated in the Act. Should it not be used for that purpose, then the United States can choose to exercise a right of re-entry or a power of termination, thereby causing a forfeiture of the right of way.

We now turn to the nature of the present interest in the reservoir site held by Waters. When the United States Supreme Court in Kern River, supra, designated the present interest under the Act in question a "limited fee" it was relying on an earlier decision in Rio Grande Western Ry. Co. v. Stringham (1915), 239 U.S. 44, 36 S.Ct. 5, 60 L.Ed. 136. In Stringham the Court characterized a railroad right of way obtained under a 1875 Act of Congress as a "limited fee." 239 U.S. at 47, 36 S.Ct. at 6, 60 L.Ed. at 138. The rationale for this characterization was later severely criticized by the Court in Great Northern Ry. Co. v. United States (1942), 315 U.S. 262, 62 S.Ct. 529, 86 L.Ed. 836. In that case the Court found that the railroad rights of way obtained

under the 1875 Act should properly have been designated easements. It follows therefore that the designation in _Kern River_, that the reservoir right of way under the 1891 Act is a limited fee, rests on a shakey legal foundation. An analysis of the limited fee/easement distinction as it pertains to a reservoir right of way under the 1891 Act is contained in United States v. Big Horn Land and Cattle Co. (8th Cir. 1927), 17 F.2d 357. In that case it was emphasized that a fee interest may be had in an easement. "We think, it, therefore, not important whether interest or estate passed be considered an easement or a limited fee. In any event it is a limited fee in the nature of an easement." _Big Horn Land and Cattle Co._, 17 F.2d at 365. We agree. _Kern River_ introduced unnecessary terminological confusion. Therefore, we hold that, despite _Kern River_, there is no useful distinction to be made between a limited fee and an easement when describing the nature of a reservoir right of way granted under the 1891 Act.

Since the reservoir right of way in question can safely be characterized as an easement, we turn to the question of whether the lower court erred when it determined that said right of way had been abandoned. The rule in Montana is that in order to constitute an abandonment an intent to abandon is necessary. Hilyard v. Engel (1949), 123 Mont. 20, 209 P.2d 895; Conway v. Fabian (1939), 108 Mont. 287, 89 P.2d 1022; Rodda v. Best (1923), 68 Mont. 205, 217 P. 669; Moore v. Sherman (1916), 52 Mont. 542, 159 P. 966. Certainly, Waters never communicated by word an intent to abandon the reservoir right of way. Further, and contrary to the claim of Eggebrecht, mere non-use of an easement by grant, no matter how long continued, does not constitute abandonment. City of

6

Billings v. O.B. Lee Co. (1975), 168 Mont. 264, 542 P.2d 97. The mere fact that from 1938 to 1976 no dam was in place with which to back water onto the reservoir site does not constitute abandonment of the reservoir right of way. Whether 38 years of non-use constitutes grounds for forfeiture under the Act is a question that can be raised only by the United States and not by the patentees and their successors. Wiltbank v. Lyman Water Company (Ariz. 1970), 477 P.2d 771. The judgment of the District Court is reversed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

_____
Honorable Gordon R. Bennett,
District Judge, sitting in place
of Mr. Justice L. C. Gulbrandson

Mr. Justice Fred J. Weber dissents as follows:

I respectfully dissent from the basic conclusion of the majority opinion that the question of non-use of the reservoir site can be raised only by the United States and not by the patentees and their successors in interest. I conclude that the successor in interest to the patentee from the United States has the capacity to raise the question of non-use.

In concluding that it is only the United States which can seek a forfeiture, the majority opinion relies upon Wiltbank v. Lyman Water Company (Ariz.Ct.App. 1970), 477 P.2d 771. There are significant differences between the Wiltbank facts and those in the present case. In Wiltbank, the United States government simultaneously granted reservoir rights and the right to enough water to fill the reservoir to its maximum height and to keep it filled if possible. The issues in Wiltbank included both the reservoir site and the right to the water to fill the reservoir. The Arizona court concluded that it would be absurd to allow a reservoir reversion to the federal government and not include the water rights to fill it. The court further concluded that the reservoir and the necessary water rights both made up the limited fee which was retained by the United States and not granted to the patentee. Based upon that conclusion, the Arizona court held that any forfeiture or abandonment is strictly an issue between the limited fee holder and the United States as the grantor with reverter rights. I do not find Wiltbank to be persuasive authority in the present case which deals only with a reservoir site and no question has been raised as to the right to the use of water itself.

I would adopt the rationale used by the Idaho Supreme Court in Hurst v. Idaho-Iowa Lateral & Reservoir Co. (Idaho

7

1921), 202 P. 1068. In Hurst the appellants claimed an easement in land for a canal and reservoir granted under the same act of Congress of March 3, 1891, described in our own case. In Hurst the respondent as the owners of the land upon which the reservoir was located, sought a declaration by the Idaho court that the easement in the lands had been forfeited and abandoned. In granting a new trial, the Idaho Supreme Court referred to the contention that only the United States may act:

> "The contention is made that only the United States can take advantage of forfeiture, and that if appellant failed to use its reservoir site for the purposes of the grant, private parties like respondents cannot quiet title in the absence of any action by the United States . . ..This is the only question which we deem it necessary to consider on this appeal." Hurst, 202 P. at 1069.

The Idaho Supreme Court concluded that the disposition by patent carried all of the interest of the United States in the land, including the right to declare a reversion, stating:

> "We think it was the intention of Congress in making provision for the disposition of public lands, over which rights of way for reservoirs and canals have been granted subject to such rights of way, that such disposition should carry with it all the interest of the United States in the land, including the reversion in case of breach of conditions subsequent or in case of abandonment. The natural construction of the language of the statute leads to this conclusion. No sufficient reason is suggested which requires a different construction. It is the policy of the United States to make final disposition of its lands and subject them to the jurisdiction of the states in which they are situated, unless some public interest requires a continuation of governmental control." Hurst, 202 P. at 1070.

I approve the foregoing analysis. There is nothing in the federal statutes or regulations which supports the majority conclusion that the right of reversion was to remain vested in the United States. There is no intention to reserve in the patent from the United States. There is no public policy

8

suggested in the present case which makes a reservation appropriate.

I would therefore conclude that as a result of the issuance of the United States patent, the patentee and his successors in interest have succeeded to the right to claim a forfeiture or reverter.

_____
Justice

Mr. Justice Frank B. Morrison, Jr. dissents as follows:

I respectfully dissent to the majority opinion.

First, I believe the Court has erred in its treatment of the reversion issue. The majority states:

> "In Kern River Co. v. United States (1921), 257 U.S. 147, 152, 42 S.Ct. 60, 62, 66 L.Ed. 175, 178, the Court stated, 'The right of way intended by the Act was neither a mere easement nor a fee simple absolute, but a limited fee on an implied condition of reverter in the event the grantee ceased to use or retain the land for the purpose indicated in the act.'"

Thus, in 1921, the United States Supreme Court held that the grant here in question was subject to a reversionary interest and in the event the grantee ceased to use the land for reservoir purposes, the reversion would occur. The effect here would be that predecessors in interest to Waters, when they ceased to use the land for reservoir purposes, triggered the reversion, automatically reinvesting the fee in Eggebrecht's predecessors. Of course, this would require affirming the district court judgment in favor of Eggebrecht. To avoid this result the majority has treated the reversion as a condition subsequent requiring reentry for purposes of effectuating a forfeiture. Since Eggebrechts did not reenter and effectuate a forfeiture, under the majority rationale, they failed.

Let us examine the means used to reach a reversal. This Court has disagreed with the decision of the United States Supreme Court in Kern River Co. v. United States, supra. The majority opinion states:

> "With respect to the future interest, the use of the term 'reverter' is clearly in error. Several cases have held that divestiture under the Act does not occur automatically upon failure to use or retain the land for the purpose stated in the Act, but must be determined by a legal proceeding. Hurst et al. v. Idaho-Iowa Lateral and Reservoir Co. (Idaho 1926), 246 P.23; Hurst et al. v. Idaho-Iowa Lateral and Reservoir Co. (Idaho 1921), 202 P. 1068; Carns v. Idaho-Iowa Lateral and

10

Reservoir Co. (Idaho 1921), 202 P. 1071; United States v. Whitney (1910), 176 F. 593 . . ."

We must bear in mind that the United States Supreme Court was interpreting a federal law in the Kern River case and its decision is not subject to question by the several states. Furthermore, most of the authorities cited predate the Kern River decision.

In this case the United States had a reversionary interest in the subject real property. When the United States patented this real estate to Eggebrecht's predecessors, they received all elements of fee simple title including the reversionary interest in the dominant estate. Therefore, when the reservoir ceased to be used for reservoir purposes, title reverted to the Eggebrechts.

Assuming arguendo that title remained in the Waters' predecessors subject to a right of reentry for condition broken, nevertheless abandonment could have occurred. That is precisely what the trial court found. Our only function is to determine whether there is substantial credible evidence in the record to support the finding of the trial court.

The majority opinion holds that: "Mere non-use of an easement by grant, no matter how long continued, does not constitute abandonment." There is old Montana law to support that statement but the trend of decisions has been to treat non-use as some evidence of abandonment. In 79 Ranch, Inc. v. Pitsch (1983), 666 P.2d 215, 40 St.Rep. 981, we held evidence of extended non use created a rebuttable presumption of abandonment:

> "The District Court found that the water rights claimed by Pitsch and 79 Ranch had been abandoned because the water had not been used for at least forty, and perhaps as many as sixty successive years. Pitsch and 79 Ranch argue that the mere

11

showing of nonuse even for a long period of time, is not sufficient to support a finding of abandonment. We disagree.

"Abandonment of a water right is a question of fact. Section 89-802, Revised Codes of Montana, 1947, (applicable here, repealed in 1973). Our scope of review is therefore limited to determining whether there is sufficient evidence to support the District Court's findings. Bagnell v. Lemery (1983), ____ Mont. ____, 657 P.2d 608, 40 St.Rep. 58. Forty years of nonuse is strong evidence of an intent to abandon a water right, and, in effect, raises a rebuttable presumption of abandonment. Because Pitsch and 79 Ranch have failed to rebut this presumption, the District Court's finding must be affirmed." (Emphasis added)

Although we are not dealing with a water right but rather with a limited fee, it would seem analogous. Although I do not think we need to decide the question of abandonment, there is sufficient evidence in the record to support the finding of the trial court in this respect which provides further basis for affirmance.

In summary, I would affirm the decision of the trial judge.

Justice

12